Michael R. Lozeau (SBN 142893)
michael@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiffs*
ERIC MENDEZ and the proposed class

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC MENDEZ, individually and on behalf of a class of similarly situated individuals,<br><br>          Plaintiff,<br><br>v.<br><br>PRICE SELF STORAGE MANAGEMENT, INC.,<br><br>Defendant. | Case No. 3:15-cv-02077-AJB-JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Location: Courtroom 3B<br>Date: May 12, 2016<br>Time: 2:00 pm<br><br>The Honorable Anthony J. Battaglia |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.   Introduction ........................................................................... 1

II.  The TCPA ................................................................................ 2

III. Summary of the Plaintiff's Claim, Litigation, and Mediation & Settlement ................................................................................. 3

IV.  Terms of the Settlement ......................................................... 6

    A.  Class Definition ................................................................. 6

    B.  Relief ................................................................................. 7

    C.  Prospective Relief ............................................................. 7

    D.  Release of Liability ........................................................... 7

V.   The Proposed Settlement Class Should be Certified ............... 8

    A.  The Requirement for Numerosity is Satisfied .................... 9

    B.  The Requirement of Commonality is Satisfied .................. 9

    C.  The Requirement of Typicality is Satisfied ..................... 10

    D.  The Requirement of Adequate Representation is Satisfied ... 11

    E.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2) ................................................................ 12

    F.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ................................................................ 13

        1.  Common Questions of Law and Fact Predominate ... 14

        2.  This Class Action is the Superior Method of Adjudication ... 14

VI.  The Court Should Appoint Plaintiffs' Counsel as Class Counsel ... 15

VII. The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate, and Thus Warrants Preliminary Approval ...................................... 16

VIII. The Proposed Plan of Class Notice is the Best Practicable Under the Circumstances ............................................................ 19

IX.  Conclusion ............................................................................ 21

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)....................................8, 11, 14

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012) ..............................................2

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)....................................passim

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355 (3d Cir. 2015)................3

*Grant v. Capital Mgmt. Srvs., L.P.*, 499 F. App'x 598 (9th Cir. 2011) ......................3

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................................passim

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ..................................11

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). .............17

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ...............................17

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008)................................16, 17

*Lane v. Facebook, Inc.*, 696 F.3d (9th Cir. 2012) .....................................................17

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)...............17

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008)................................................10

*Pierce v. Cnty. of Orange*, 526 F.3d 1190 (9th Cir. 2008)................................13, 14

*Rannis v. Recchia*, 380 F. Appx. 646 (9th Cir. 2010) ................................................9

*Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009) ........................2

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010)..................................................................10, 11, 14

**UNITED STATES DISTRICT COURT CASES**

*Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) ..........10

*Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC,
2014 W.L. 1389329 (S.D. Cal. Apr. 9, 2014)......................................................19

*Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558 (S.D. Cal. 2012)..............................9

*Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D 614 (S.D. Cal. 2015) ...............11

*Bellows v. NCO Financial Systems, Inc.*, 2008 WL 4155361,
(S.D. Cal. Sept. 5, 2008) ..........................................................................13, 14, 19

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010) ............................9

*Gragg v. Orange Cab Co., Inc.*, C-12-0576, 2013 WL 1788479,
  (W.D. Wash. Apr. 26, 2013) ............................................................................9

*In re Ferrero Litigation*, 278 F.R.D. 552 (S.D. Cal. 2011)..................................8, 13

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............16

*Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011)..................................8

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) .................9

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 648 (W.D. Wash. 2007) ................11

**PENDING UNITED STATES DISTRICT COURT CASES**

*Burris v. Sherwin-Williams, Co.*, No. 4:15-cv-00343-DW,
  (W.D. Mo. order filed Nov. 17, 2015) ....................................................................19

**STATUTES, RULES AND REGULATIONS**

47 U.S.C. § 227 .....................................................................................................passim

Fed. R. Civ. P. 23 ..................................................................................................passim

**OTHER SOURCES**

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
  (4th ed. 2002) .....................................................................................8, 13, 14, 16

MANUAL FOR COMPLEX LITIGATION (3d ed. 1995)....................................................13

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) .............................................7, 13

Rules and Regulations Implementing the Telephone Consumer Protection
  Act of 1991, 73 FED. REG. 6041-01, 6042 (FEB. 1, 2008)........................................3

## I.      Introduction

Defendant Price Self Storage Management, Inc., ("Defendant" or "PSS"), a company which rents covered and locked storage spaces to individuals at various locations throughout California, developed a practice of sending monthly rent notifications to its customers using its "CallPotential software." (Compl. at 3.) Each text message alerted customers of their ability to opt-out of receiving the text message reminders by sending "STOP" in a reply text message. (*Id.*) Plaintiff Eric Mendez ("Plaintiff" or "Mendez") received such reminders and replied "STOP" to discontinue receiving any further text messages. (*Id.* at 5.) Unfortunately for the Plaintiff, and 315 of PSS's other customers ("Settlement Class Members" or "Class Members"), due to a flaw in PSS's text messaging system PSS did not stop sending monthly text messages to its customers after they replied "STOP" one or more times. This violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et seq. ("TCPA"). (*Id.* at 3.)

Mendez tried other channels to get the messages to stop to no avail, and he ultimately filed the instant class action lawsuit (the "Action") on behalf of himself and all others similarly situated on September 17, 2015. (*See* Dkt. 1.) After litigation and informal discovery commenced, counsel for Plaintiff and PSS participated in a full-day mediation session overseen by the Honorable Matt Railey (Ret.) in Denver, Colorado. The mediation was successful and the Parties reached an impressive agreement. (*See* "Settlement Agreement" or "Agreement," attached hereto as Exhibit A) that fairly and adequately redresses the injuries caused to Plaintiffs. (Agrmt. at 2.)

The Agreement creates a fund totaling $450,000 (the "Settlement Fund") and gives the proposed Settlement Class Members an option to choose between two lucrative options: $750 cash or $1,100 in credit towards remaining PSS account balances and future services. (*Id.* at 11-14.) The Agreement also releases PSS from future claims by Class Members. (*Id.* at 15.) Finally, the Agreement provides Class

Members with Notice of their rights to be excluded from, comment upon, and object to the Settlement Agreement and procedures for redeeming their award through the use of a Claim Form (attached as Exhibit A to the Agreement. (*See* Agrmt. at 16-19.)

The tremendous results achieved by the Settlement Agreement—which exceeds on a per-claim basis settlements that have received final approval by courts in this and other districts—are well beyond those required for preliminary approval. Plaintiff thus moves the Court to preliminarily approve the Agreement, certify the proposed Class, appoint Plaintiff Eric Mendez as Class Representative ("Class Representative"), appoint Steven Woodrow, Patrick Peluso, and Stefan Coleman as Class Counsel ("Class Counsel"), and order that notice be disseminated in accordance with the Agreement.

## II.     The TCPA

A brief summary of the law that forms the basis of Plaintiff's claims helps put the Settlement Agreement in context. Congress enacted the TCPA in 1991 as a response to "[v]oluminous consumer complaints about abuses of telephone technology…." *Mims v. Arrow Financial Svcs's, LLC*, 132 S. Ct. 740, 744 (2012). In enacting the TCPA, Congress sought to "protect the privacy interests of telephone subscribers." *Satterfield v. Simon & Schuster*, *Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see also Mims*, 132 S. Ct. at 745. The TCPA applies with equal force to the making of text message calls as it does to the making of voice calls to cellular phones. *Satterfield,* 569 F.3d at 954.

The TCPA prohibits calls made with equipment termed an "automatic telephone dialing system" ("ATDS"), which Congress defined as "equipment which has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC has explained that equipment that dials or sends text messages to a list of numbers is an ATDS, because "'the basic function of such dialing

equipment' is the same—'the capacity to dial numbers without human intervention.'" *Gragg v. Orange Cab Co., Inc.*, C-12-0576, 2013 WL 1788479, at *2 (W.D. Wash. Apr. 26, 2013) (citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 73 Fed. Reg. 6041-01, 6042 (Feb. 1, 2008)).

To prevail on a claim under the TCPA, a plaintiff must show that a person: (1) made text message calls; (2) using an ATDS; (3) to a telephone number assigned to a cellular telephone service. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Whether Plaintiff and other Class members provided their prior express consent to receive such text messages is an affirmative defense. *See, e.g.*, *Grant v. Capital Mgmt. Srvs., L.P.*, 499 F. App'x 598, 600 n.1. (9th Cir. 2011) ("'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."); *see also Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 366 (3d Cir. 2015) (recognizing the defendant's burden of showing prior express consent as an affirmative defense).

The TCPA sets statutory damages in the amount of $500 per violation, and provides for injunctive relief prohibiting the further transmission of such messages. *See* 47 U.S.C. § 227(b)(3)(A-B). Having put Plaintiff's claims in legal perspective, a review of the process that led up to the Settlement is demonstrative of the procedural and substantive fairness of the Settlement Agreement.

## III.   Summary of the Plaintiff's Claim, Litigation, and Settlement Process.

Plaintiff Mendez received text messages from PSS after he had requested for the messages to STOP. He brought the case alleging, on behalf of himself and a class of similarly situated cellphone users, that the text messages violated the TCPA. Following initial discussions between counsels and an exchange of necessary information, the Parties engaged in a mediation process with a respected mediator.

1  The result of these efforts by Plaintiff's counsel, Defendant's counsel, and the

2  mediator is an undeniably favorable deal that reflects optimal relief for the Class.

3       **A.**    **The Plaintiff's Claim**

4      In or around January 2013, Plaintiff Mendez entered into an agreement for a

5  storage unit with PSS, and he provided his cellular telephone number to the

6  company in connection with his application. (Compl. at 5.) Shortly thereafter,

7  Defendant began sending messages to Plaintiff's cellular phone number. (*Id.*) A

8  typical text message would read:

9  > Eric, Please contact Price Self Storage about your storage acct. To
   > discuss call 19092530098 or Pat at http://cptl.me/3gf909 TXT STOP
10 > to Unsubscribe.

11 (*Id.*)

12     Plaintiff received the same or similar text messages for approximately six

13 months, when he decided that he no longer wished to receive them. (*Id.*) Following

14 the instructions contained in the message, Plaintiff typed and sent "STOP" to

15 unsubscribe from the texts. (*Id.*) Instead of honoring Plaintiff's request, however,

16 PSS, through its text messaging vendor, continued to send Plaintiff text messages.

17 Some of these messages stated that PSS could not receive messages and to call the

18 number listed to stop receiving messages. (*Id.*) Mendez then called the number

19 contained in the messages and an operator informed him that in order to stop the text

20 messages he would need to physically appear at a PSS location. (*Id.* at 5-6.) After

21 informing the operator that he would be unable to physically travel to PSS's

22 location, the operator told Plaintiff that he could stop the text messages by replying

23 "STOP." (*Id.* at 6.) Like before, Plaintiff's "STOP" response did not prevent the text

24 messages from being sent to his cellphone. In or around June or July of 2014,

25 Plaintiff visited a PSS location to request his opt-out in-person. (*Id.*) There, a PSS

26 employee informed Plaintiff that he would be removed from the text message list.

27 Despite this assurance, just a few weeks later Plaintiff again started receiving text

28 messages from PSS's system. (*Id.*)

1    Plaintiff replied "STOP" to no avail for over a year. Mendez again went back

2  to PSS to make another in-person request that his cellphone number be removed

3  from PSS's list. (*Id.*)

4    **B.    The Litigation History**

5    Given his inability to get PSS to stop sending him text messages, Plaintiff

6  ultimately contacted his current counsel to inquire about his legal rights. Prior to the

7  initiation of the Action, proposed Class Counsel undertook an extensive

8  investigation into PSS and its text messaging platform to determine the scope of any

9  potential TCPA claims. (*See* Declaration of Attorney Steven Woodrow ("Woodrow

10  Decl.") ¶ 2, attached as Ex. B). First, Class Counsel worked closely with Plaintiff

11  Mendez to determine the extent of the intrusive text messages sent by PSS to his

12  cellphone. (Woodrow Decl. ¶¶ 2-3.) Class Counsel thereafter reviewed and analyzed

13  complaint message boards and other sources to assess whether other PSS customers

14  had similarly received post-STOP texts. (*Id.* at ¶ 3.) After a thorough investigation,

15  Class Counsel determined that a good faith basis existed to pursue the case as an

16  alleged class action on behalf of Plaintiff Mendez and all other cellphone users who

17  received similar text messages from PSS following their submission of a STOP text.

18  (*Id.* at ¶ 4.)

19    On September 17, 2015, Plaintiff Mendez filed a class action complaint in the

20  United States District Court for the Southern District of California against PSS

21  alleging that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C.

22  § 227. (*See* Dkt. 1.) Specifically, the Complaint alleged that PSS violated the TCPA

23  by sending text messages through an automatic dialer without Plaintiff's prior

24  express written consent—and after any such consent had been revoked through a

25  STOP request—and sought statutory damages and injunctive relief on behalf of a

26  nationwide class. (*Id.*)

27    Following the filing of the initial Complaint the counsel for the parties

28  engaged in discussions regarding their respective views of the case and PSS's

potential defenses. The Parties thereafter agreed to exchange informal discovery under a protective order protecting confidentiality—including information regarding the size and scope of the alleged class and PSS's financial condition—from which Plaintiff could appropriately evaluate the likelihood of success and value of the claims.

### C.   The Mediation and Settlement History

Following the exchange of initial discovery related to the scope of the class, counsel for the Parties agreed that the case should go to mediation and worked to schedule a settlement conference. (Woodrow Decl. ¶ 5.) On January 5, 2016, counsel for the Parties engaged in a full-day mediation session in Denver, Colorado conducted by the Honorable Matthew Railey (Ret.) of the Judicial Arbitration Group, Inc. ("JAG"). (Agrmt. at 2.) Through the mediation process, the Parties exchanged additional, updated information regarding the size and scope of the proposed class and PSS's financial position. (*Id.* at 2-3.) After extensive discussions facilitated by Judge Railey, counsel for the Parties reached an agreement in principle regarding the relief to be made available to the Class. (*Id.* at 3.) Once the agreement in principal was reached, the Parties negotiated an incentive award for Mendez and an amount for reasonable attorneys' fees for proposed Class Counsel. (*Id.*)

The result is a particularly strong settlement that Plaintiff Mendez and proposed Class Counsel are proud to bring to the Court for preliminary approval. As set forth below, the Parties' extensive efforts and arm's length negotiations have produced settlement terms that clearly fall within the range of what the Court would ultimately adjudicate as fair, reasonable, and adequate on final approval.

## IV.   Key Terms of the Settlement

The precise terms of the settlement are attached hereto in the Settlement Agreement (Ex. A). A brief summary of the essential terms are as follows:

### A.   Class Definition

The "Settlement Class" or "Class" is defined as all Persons in the United

States of America or its territories who at any point from the beginning of time through the date of this Agreement: (a) received at least one text message on his or her cellular phone; (b) responded to the text message with the response STOP; and (c) received at least one additional text message from PSS apart from any message confirming the Peron's STOP request. (Agrmt. at 6-7.) PSS reasonably believes that the total estimated size of the Settlement Class is compromised of 315 Persons to whom text messages were sent after each Person requested STOP. (*Id.* at 7.)

## B. Monetary Relief

The Settlement provides Class Members who file claims a choice of the type of relief they want. Specifically, Defendant has agreed to provide to each Class Member who files a claim either a cash payment in the amount of $750 or a certificate for $1,100 worth of storage services. (*Id.* at 13-14.) PSS's obligation is capped at $450,000 total ("Settlement Fund"). (*Id.* at 11.) That is, if the total amount required to pay each approved claim would exceed the amount in the Settlement Fund after payment of settlement administration expenses, the court-approved incentive award to Eric Mendez for his service as the Class Representative, and any reasonable attorneys' fees awarded to proposed Class Counsel, then each Settlement Class Member with an approved claim will receive a *pro rata* share of the amount of the settlement fund remaining after payment of such amounts. (*Id.* at 14.)

## C. Prospective Relief

PSS further agrees that it shall affirmatively use commercially reasonable efforts to, on or before the Effective Date (*id.* at 7), and continuing for a period of six (6) months from the Effective Date, honor all "STOP" requests received by persons to whom it sends text messages. (*Id.* at 15.) In reality, PSS ceased sending such text messages in response to this litigation and has taken steps together with its vendor to ensure such messages are not transmitted in the future.

## D. Release of Liability

In exchange for the relief described above, PSS and its related and affiliated

entities will receive a full release of any claims relating to text messages sent to Class Members after replying with a "STOP" text message. (Agrmt. at 15-16.)

As explained below, such terms are decidedly favorable to the Class and the Court should grant preliminary approval to the instant Agreement.

## V.     The Proposed Settlement Class Should Be Certified.

The Court's first step in the process of granting preliminary approval of a settlement is to determine whether the proposed settlement class is appropriate for certification. MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2004); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class for settlement purposes, the plaintiff must first demonstrate that the proposed class and proposed class representatives meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4).

In addition, a plaintiff seeking class certification must also meet at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23(b); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Rule 23(b)(2) provides that "the party opposing the class must have acted or failed to act on grounds generally applicable to the proposed class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *In re Ferrero Litigation*, 278 F.R.D. 552, 561 (S.D. Cal. 2011) (quoting Fed. R. Civ. P. 23(b)(2)) (internal quotation marks omitted). Rule 23(b)(3), in turn, requires that the plaintiff demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011). Here, as set forth below, Plaintiff meets each of the elements for class certification under Rule 23(a) and satisfies the requirements of both Rule 23(b)(2) and Rule 23(b)(3).

### A.      The Requirement of Numerosity is Satisfied.

The first prerequisite to class certification under Rule 23 is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no minimum number of potential class members necessary in order to satisfy the numerosity requirement, though courts have generally found classes of 40 members or more satisfactory. *Rannis v. Recchia*, 380 F. App'x. 646, 650-61 (9th Cir. 2010) (finding a class of 20 satisfied the numerosity requirement); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 632 (S.D. Cal. 2010) (finding a class of 347 individuals satisfied the numerosity requirement); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (stating "classes of 40 or more are numerous enough"). Further, "impracticality does not mean impossibility" and the analysis should focus on the "difficulty or inconvenience of joining all members of class." *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 564 (S.D. Cal. 2012).

Here, the proposed Class is comprised of 315 members that are all, or were, PSS's customers that continued to receive text messages from PSS after replying "STOP." (Agrmt. at 7.) Thus, the Class here is ascertainable and numerous, as 315 persons well exceeds the 40-member benchmark to establish numerosity. *Ikonen*, 122 F.R.D. at 262.

### B.      The Requirement of Commonality is Met as Well.

Second, Rule 23 requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is demonstrated when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Dukes*, 131 S. Ct. at 2545, 2557 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). The common contention must be of such a nature that it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue that

is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545.

Moreover, the permissive standard of commonality provides that "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008). Courts have found that the issue of prior express consent by class members maintaining claims for violations of the TCPA to satisfy the commonality requirement. *Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303, 308-09 (S.D. Cal. 2015).

Here, the claims of every Class Member are nearly identical. That is, the Class Members share common statutory TCPA claims premised on the allegation that PSS continued to send text messages to their cell phones after they replied "STOP." (Agrmt. at 6-7.) The transmission of these text messages leads to a common factual and legal question for the class: whether the act of replying "STOP" revoked their consent to receiving text messages from PSS such that any post-STOP text messages violated the TCPA. Indeed, the claims of every class member hinges on whether such post-STOP messages violate the TCPA. (Agrmt. at 6-7.) The answer is the same for everyone. Likewise, because PSS sent the texts to all customers using the same equipment, whether that system qualifies as an ATDS under the TCPA presents a common factual and legal question.

As such, the claims are susceptible to a "class wide resolution" based on common evidence in satisfaction of Rule 23(a)(2). Thus, Plaintiff Mendez meets the requirement of commonality.

## C.     The Requirement of Typicality is Satisfied

Rule 23 next requires that the class representative's claims be typical of those of the putative class she seeks to represent. Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that "the interests of the named representative align with the interests of the class." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168,

1175 (9th Cir. 2010). Typicality is measured under a permissive standard and does not require that the representative's claims be substantially identical, but only that they are "reasonably coextensive with [the claims] of absent class members." *Hanlon*, 150 F.3d at 1020. Typicality is present when a defendant acts uniformly toward the class members, where that uniform conduct results in injury to the class members, and where the named plaintiff suffers a similar injury to that of the class members as a result. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, there can be no doubt that Mendez's claims are typical of those of the rest of the Class Members. As with everyone else, PSS continued to send text messages to Mendez after he replied "STOP." (Agrmt. at 6-7.) The statutory injury suffered by Plaintiff mirrors the injuries of the Class Members—everyone experienced the same type of annoyance necessarily attendant to the receipt of unwanted messages. (*See* Compl. at 4-5.) Indeed, if Mendez prevails on his claim that PSS's post-STOP text messages were sent to him without his consent, then everyone else in the Class will similarly have a right to recovery on the same legal theory. Hence, because the claims of the Plaintiff and proposed Class Members "arise from the same conduct of the Defendant[s] – alleged violations of the TCPA – and are based on the same legal theories" the typicality requirement is satisfied. *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D 614, 626-27 (S.D. Cal. 2015); *see also Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 648 (W.D. Wash. 2007) (holding that the typicality requirement satisfied where the named plaintiff and putative class members all received unsolicited fax advertisements from defendant).

### D.     The Requirement of Adequate Representation is Satisfied

Finally, Rule 23(a) requires that the proposed class representative must, at all times, "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if representation is in fact adequate, the Court must ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other

class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Further, where a plaintiff's claims are found to be typical of those of the class, appointing that plaintiff as the class representative will also ensure that interests of the class remain adequately protected. *See Dukes*, 131 S. Ct. at 2551 n.5 (discussing how the fulfillment of the typicality requirement usually also supports a finding of adequacy because an adequate representative will have typical claims).

Here, Plaintiff's interests are entirely representative of and consistent with the interests of all Class Members. Plaintiff is committed to the effective and diligent prosecution of this case (Agrmt. at 2-3; Compl. at 4, 7.), and no actual conflicts of interest are present that would negate such representation. (Agrmt. at 7, 13-14.)

Similarly, proposed Class Counsel have already undertaken significant steps to further the interests of proposed Class Members by ascertaining the Class, litigating the case, and by reaching this proposed Settlement Agreement through an arm's-length negotiation overseen by a respected mediator. (*Id.* at 3, 7.) Proposed Class Counsel will also continue to adequately protect the interests of the Class, as they have regularly engaged in major complex litigation and have extensive experience in consumer class action lawsuits. Specifically, proposed Class Counsel has substantial experience litigating TCPA class action lawsuits that are similar in size, scope and complexity to the present case. (Woodrow Decl. ¶ 11,; *see also* Firm Resume of Woodrow & Peluso, LLC, a copy of which is attached to the Woodrow Decl. as Exhibit 1.)  As such, the Plaintiff and proposed Class Counsel will adequately represent the interests of the members of the Settlement Class.

### E.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2)

Upon meeting the requirements of Rule 23(a), a plaintiff must also then satisfy one of the three requirements of Rule 23(b). *Dukes*, 131 S.Ct. at 2548. Rule 23(b)(2) is satisfied where the defendant has "acted or failed to act on grounds

generally applicable to the proposed class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the whole class." *In re Ferrero Litigation*, 278 F.R.D. at 561. Rule 23(b)(2) is satisfied where a claim is brought under the TCPA, which provides injunctive relief, and a plaintiff seeks injunctive relief in his complaint that creates a class-wide resolution. *Bellows v. NCO Financial Systems, Inc.*, 2008 WL 4155361, at *7 (S.D. Cal. Sept. 5, 2008) (holding that "additional training and implementation of new policies" constituted class-wide injunctive relief that satisfied Rule 23(b)(2)).

In this case, Rule 23(b)(2) is satisfied because of the uniform behavior of PSS in sending post-STOP text messages to every Class Member and because the agreed-upon injunctive relief will redress the group-wide injury. (Agrmt. at 6-7, 13-14.) PSS acted by continuing to send text messages (or failed to act by neglecting to stop such messages) in the same manner towards all member of the Class— by continuing to send text messages to Class Members after they had expressly revoked their consent to receiving such messages. (*Id.* at 6-7.) Further, the agreed-upon injunctive relief—requiring PSS to use all commercially reasonable efforts to honor "Stop" reply text messages—will redress the alleged group wide injury for everyone in the Class. (*Id.* at 15.) As such, the Class is certifiable under Rule 23(b)(2).

## F.     The Proposed Settlement Also Meets the Requirements of Rule 23(b)(3)

In addition to meeting the requirements of Rule 23(b)(2), the record also supports certification under Rule 23(b)(3). Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008). Certification under Rule 23(b)(3)

is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. Here, the common question of whether it violated the TCPA to send post-STOP text messages predominates over any perceived individual issues, and this Settlement presents a superior and manageable way for resolving the controversy.

### 1.   Common Questions of Law and Fact Predominate

The predominance requirement focuses on whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. Common issues of law and fact have been found to predominate where claims brought under the TCPA of a class representative and class members are substantially "identical," *Bellows*, 2008 WL 4155361 at *7, or where there are no individual issues that are likely to distract from the focus of the litigation. Here, the common factual and legal questions—whether the Class Member revoked their consent to receive text messages by responding "STOP"—"forms a common nucleus of facts and potential legal remedies" that dominates the litigation. (Compl. at 8.) Because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is satisfied.

### 2.   This Class Action is the Superior Method of Adjudication

Finally, certification of the Settlement Class as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the class. To meet the requirement of superiority, a plaintiff must show that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175-76. This final factor has far less application when the court is presented with a settlement class for review, as no trial of the case will be necessary. *Amchem*, 521 U.S. at 623.

Here, the class is comprised of 315 individual cellphone owners who have claims that range from $500 to a few thousand dollars, depending on the number of text messages they received. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Rather, the individual prosecution of their TCPA claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. (Agrmt. at 7.) Indeed, because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[C]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial.") (internal citation omitted).

Accordingly, the Court may certify the Settlement Class pursuant to Rule 23(b)(3) as well.

## VI.   The Court Should Appoint Plaintiffs' Counsel as Class Counsel.

The next step when deciding whether to preliminarily approve a settlement is to appoint Class Counsel. Indeed, under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: (1) the proposed class counsel's work in identifying or investigating potential claims, (2) the proposed class counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) the proposed class counsel's knowledge of the applicable law, and (4) the proposed class counsel's resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed Class Counsel have extensive experience in prosecuting similar TCPA class actions and other complex litigation. *See* Woodrow

& Peluso Firm Resume and Law Office of Stefan Coleman, LLC Firm Resume,

attached as Exs. 1 & 2 respectively, to the Woodrow Decl., Ex. B. This includes

TCPA claims involving a defendant's alleged failure to honor and process STOP

requests sent by recipients of the messages. Further, proposed Class Counsel have

diligently investigated and prosecuted *this* matter by dedicating substantial resources

to the investigation of the claims at issue in the Action and have successfully

negotiated this Settlement with PSS. (Woodrow Decl. ¶¶ 2, 11.) Accordingly, the

Court should appoint Steven L. Woodrow and Patrick H. Peluso of Woodrow &

Peluso, LLC, and Stefan Coleman of the Law Offices of Stefan Coleman, LLC, as

Class Counsel.

## VII.   The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate, and Thus Warrants Preliminary Approval.

Following class certification, a court faced with a class action settlement must

engage in a well-established two-step approval process. Fed. R. Civ. P. 23(e); *see

also* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"),

§11.25, 3839 (4th ed. 2002). The first step is a preliminary, pre-notification hearing

to determine whether the proposed settlement is "within the range of possible

approval." *Newberg*, §11.25, at 3839 (quoting MANUAL FOR COMPLEX LITIGATION

§30.41 (3d ed. 1995)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir.

2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

2007). This hearing is not a fairness hearing; rather, its purpose is to ascertain

whether there is any reason to notify the putative class members of the proposed

settlement and whether to proceed with a fairness hearing. *In re Tableware Antitrust

Litig.*, 484 F. Supp. 2d at 1079. Notice of a settlement should be sent where the

settlement "appears to be the product of serious, informed, non-collusive

negotiations, has no obvious deficiencies, does not improperly grant preferential

treatment to class representatives or segments of the class, and falls within the range

of possible approval." *Id.*

The *Manual for Complex Litigation* characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from the settling parties. § 21.632 (4th ed. 2004). "[W]hether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). If a court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 3839.

A strong judicial policy exists favoring the voluntary conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)). While a district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. In fact, when a settlement is negotiated at arm's-length by experienced counsel, courts often find that there exists a presumption that the end product is fair and reasonable. *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Though not dispositive, the presence of a neutral mediator who assisted the settlement negotiations is further proof that the settlement was reached fairly and provides adequate relief. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011).

In addition, a court is not required to ascertain "a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award." *Lane*, 696 F.3d at 823. It need not determine the potential recovery for each plaintiff's cause of action, even in those cases involving statutory damages, given that questions of fact discernible only at trial would render any finding "speculative and contingent." *Id*. (finding that a $9.5 million class recovery "would be substantial under most circumstances").

1    Ultimately, the Court's role is to ensure that the settlement is fundamentally fair,

2    reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Bluetooth*, 654 F.3d at 950.

3            There is little question that the proposed Settlement Agreement falls well

4    "within the range of possible approval"—or exceeds it. The Parties have undertaken

5    extensive negotiations and reached an outcome that best serves the interests of both

6    Parties. (Woodrow Decl. ¶ 13.) The Agreement was reached with the substantial

7    assistance of the Honorable Matt Railey (Ret.), who presided over the settlement

8    mediation, assisted the Parties in reaching the Settlement Agreement, and ensured

9    that there was no collusion in the negotiations whatsoever (*Id.*) Indeed, the

10   Agreement is the result of arm's length negotiations where both Parties contributed

11   substantially and materially to the Agreement's preparation, and where no

12   negotiation of the Class Representative's incentive award or any amount for

13   reasonable attorneys' fees was negotiated until after the relief to the Class had been

14   agreed upon. (*Id.* ¶ 9.)

15           The terms of the Settlement Agreement build off of the foundational terms

16   developed with the help of Judge Railey. First, Settlement Class Members have the

17   option of claiming either a $750 Cash Payment or a $1,100 Certificate redeemable

18   for outstanding PSS account balances and future storage services. (Agrmt. at 13-14.)

19   All Claims are payable from a Settlement Fund, which itself totals $450,000. (*Id*. at

20   11.)  The amount is fair, considering the possible consequences to PSS under the

21   TCPA, which would range from $500 to $1500 per text message. When multiplied

22   by the approximately 1,400 text messages sent by PSS in the case, $450,000

23   represents a 64% recovery of what the Class Members could have received IF they

24   achieved both adversarial class certification and judgment in their favor and against

25   PSS, assuming a damages award of $500 per message. (Compl. at 12.) Second, PSS

26   has agreed to focused prospective relief, the crux of which removes Class Members

27   from PSS's text message list and requires PSS to honor all "STOP" reply text

28   messages. (Agrmt. at 15.)

Plaintiff's Motion for Preliminary        - 18 -        Case No. 3:15-cv-02077-AJB-JLB
Approval of Class Action Settlement

Although Plaintiff and proposed Class Counsel are confident in the strength of their claims and that they would ultimately prevail at trial, they also recognize that litigation is inherently risky. (*Id*. at 4.) When the merits of Plaintiff's claims are weighed against the legal and factual obstacles remaining, combined with the complexity of class action practice against experienced defense counsel, it is apparent that the proposed settlement is clearly in the best interest of the Settlement Class Members, as it immediately provides substantial monetary recovery and prospective relief. (*Id.* at 4, 13-14.)

Finally, the Court need not rule on the fairness, reasonableness, and adequacy of the proposed Settlement Agreement in a vacuum: less favorable class action settlements have received final approval by federal courts nationwide. *See e.g. Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC, 2014 W.L. 1389329, at *4 (S.D. Cal. Apr. 9, 2014) (finding a per-claim amount range of between $7 and $156 fair, reasonable, and adequate); *Bellows*, 2008 WL 4155361 at *9 (finding a per-claim amount of $70 satisfactory for preliminary approval); *Burris v. Sherwin-Williams, Co*., No. 4:15-cv-00343-DW (W.D. Mo. order filed Nov. 17, 2015) (granting preliminary approval of TCPA per-claim amount of approximately $307). As with these similar cases, this Settlement easily falls well "within the range of possible approval," is fair, reasonable, and adequate, and should thus be preliminarily approved.

## VIII. The Proposed Plan of Class Notice is the Best Practicable Under the Circumstances

As a final consideration, to satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Dukes*, 131 S. Ct. at 2558. Rule 23(e)(1) similarly states that "[t]he court must direct notice in a reasonable

manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53, at 167. The substance of the notice to the settlement class must describe the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, as well as explain that settlement class members may enter an appearance through counsel if so desired, request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. 23(c)(2)(B).

As evidenced by the proposed notices appended to the Settlement Agreement itself, the Notice plan developed by both Parties is the best practice under the circumstances. Within seven days of Preliminary Approval, the Settlement Administrator will be provided a Class List, as updated by PSS, containing the cellular telephone numbers, names of the cellphone owners, and last known mailing addresses of all 315 Class Members. (Agrmt. at 16-17.) For those numbers for which an address cannot be determined, the Settlement Administrator will reasonably attempt to determine such addresses through utilization of the national change of address registry and appropriate reverse look up methods. (*Id.* at 16, 19-20.) The Settlement administrator will then send each Class Member, via first-class mail, a Notice Form (attached as Exhibit B to the Settlement Agreement) and a Claim Form (attached as Exhibit A to the Settlement Agreement). (*Id.* at 16-19.)

The Notice will provide information to Class Members of their inclusion in the Class because they were sent text messages by PSS after replying "STOP," allegedly in violation of the TCPA. (*Id.* at 16-18.) The Notice also sets forth the key terms and provisions of the proposed Agreement, including the settlement amount and proposed injunctive relief. (*Id.*) The Notice will advise Settlement Class Members of their rights, including the right to be excluded from, comment upon, and object to the Agreement and the procedures for taking such actions. (*Id.* at 17-

18.) The Notice will also include the Claim Form and explain the procedures for submitting a claim for either the $750 in cash or the $1,100 certificate for future storage services. (*Id.* at 16.) The Notice will also clearly state the date, time, and place of the Final Approval Hearing and advise the Class Members of their right to attend the Hearing, and to opt-out and to object to the Agreement. (*Id.* at 17-18, 22.)

## IX.    Conclusion

Proposed Class Representative Mendez and Proposed Class Counsel are particularly proud of the strength of the Settlement Agreement they present to the Court for preliminary approval. The instant Agreement provides Class Members with the option of electing to receive either $750 in cash or a certificate for $1,100 in storage services, and also secures an agreement from PSS that it will stop sending such messages. As a consequence, the Court should find that the Agreement confers substantial benefits on the Class, compares favorably with other TCPA class action settlements, and falls well within the range of Final Approval such that notice should be sent to the Settlement Class Members.

For the foregoing reasons, Plaintiff respectfully ask that the Court certify the class, appoint Erik Mendez as the Class Representative, appoint Steven L. Woodrow, Patrick H. Peluso, and Stefan Coleman as Class Counsel, grant preliminary approval of the proposed Settlement Agreement, approve the form and manner of notice described above, schedule a Final Fairness hearing, and grant such further relief that the Court deems reasonable and just.

Dated: March 4, 2016                     Respectfully Submitted,

                                         Erik Mendez,
                                         individually and on behalf of a class of
                                         similarly situated individuals,


                                          /s/ Michael R. Lozeau
                                         One of Plaintiff's Attorneys

Michael R. Lozeau (SBN 142893)
michael@lozeaudrury.com
Rebecca Davis
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Steven L. Woodrow*
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso*
(ppeluso@woodrowpeluso.com)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman, Esq.
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
law@stefancoleman.com


*pro hac vice

1

## **CERTIFICATE OF SERVICE**

2          The undersigned certifies that, on March 4, 2016, I caused this document to

3   be electronically filed with the Clerk of the Court using the CM/ECF system, which

4   will send notification of filing to counsel of record for each party.

5

6

7                                        /s/     Michael R. Lozeau

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28