Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiffs*
ERIC MENDEZ and the proposed class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC MENDEZ, individually and on behalf of a class of similarly situated individuals,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PRICE SELF STORAGE MANAGEMENT, INC.,<br><br>　　　　　Defendant. | Case No. 3:15-cv-02077-AJB-JLB<br><br>**MOTION FOR AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AWARD OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**<br><br>Date: August 22, 2016<br>Time: 3:00 p.m.<br><br>The Honorable Anthony J. Battaglia |

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.   INTRODUCTION ....................................................................1

II.  FACTUAL BACKGROUND AND TERMS OF SETTLEMENT  ..........2

    A.  The TCPA and its Implementing Regulations ....................................2

    B.  Summary of the Litigation, Mediation and Settlement....................4

    C.  Terms of the Settlement Agreement and Provision for Reasonable Attorneys' Fees and Incentive Awards ........................6

III. ARGUMENT............................................................................8

    A.  Class Counsel's Requested Fee Award is Demonstrably Reasonable—It Represents 22% of the Settlement Fund, Which is Less Than the 25% Benchmark for Attorneys' Fees in the Ninth Circuit.......................................................9

        1.  Class Counsel Achieved an Exceptional Result for Class Members ........................................10

        2.  Class Counsel Faced Meaningful Risk in Taking the Case ......13

        3.  The Benefits Extend Beyond the Settlement Fund....................14

        4.  An Award of 22.22% Falls Within the Market Rate ...............14

        5.  Class Counsel Faced Costs and Were Unable to Take Other Cases While Prosecuting this Matter...........................15

        6.  Class Counsel Prosecuted this Case on a Contingent Basis .....16

    B.  The Requested Fee is Also Reasonable Under the Lodestar Method ........................................17

    C.  Class Counsel Also Incurred $3,109.59 in Expenses ......................20

    D.  The Court Should Approve the Requested Incentive Award.........20

IV.  CONCLUSION ........................................................................21

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ..........................................................8

*Hall v. Cole*, 412 U.S. 1 (1973) ...............................................................................14

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012) ...............................................2

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002)...........18

*Florida v. Dunne*, 915 F.2d 542 (9th Cir. 1990) ........................................................8

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013)......................................3

*Grant v. Capital Mgmt. Srvs., L.P.*, 499 F. App'x 598 (9th Cir. 2011) ......................3

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). ....8, 9, 10

*In re Online DVD Rental Antitrust Litig.*, 2015 WL 846008 (9th Cir. 2015).........8, 9

*In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) .................10

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ...........................14

*In re Wash. Pub. Power Supply Systems Sec. Litig.,* 19 F.3d 1291
(9th Cir. 1994)..............................................................................................................16

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 2016 WL 611441 (3d Cir.
2016) .............................................................................................................................15

*Morris v. Lifescan, Inc.*, 54 F. App'x 663 (9th Cir. 2003).........................................14

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................20

*Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009) ........................2

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)..................................................17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ..............................14, 18

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997).......10

**UNITED STATES DISTRICT COURT CASES**

*Aboudi v. T-Mobile USA, Inc.*, 2015 WL 266137 (S.D. Cal. 2015)...............9, 10, 14

*Bellinghausen v. Tractor Supply Co.*, 2015 WL 1289342 (N.D. Cal. 2015) ............20

*Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, 2015 WL 4498741
(N.D. Ill. 2015) ............................................................................................................15

*Cohorst v. BRE Props., Inc.*, 2011 WL 7061923 (S.D. Cal. 2011)............................12

*Fontes v. Heritage Operating, L.P.*, 2016 WL 1465158 (S.D. Cal. 2016) .............. 18

*Gragg v. Orange Cab Co., Inc.*, C-12-0576, 2013 WL 1788479,
   at *1 (W.D. Wash. Apr. 26, 2013) ......................................................................... 3

*Hageman v. AT&T Mobility LLC*, 2015 WL 9855925 (D. Mont. 2015) ............... 15

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) .................................... 20

*Hopson v. Hanesbrands Inc.*, 2009 WL 928133 (N.D. Cal. 2009) ........................ 20

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ...................... 8, 14

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill.
   2015) ...................................................................................................................... 12

*In re Heritage Bond Litig.*, 2005 WL 1594389 (C.D. Cal. 2005) ........................ 12

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......... 17

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............ 12, 16

*In re Oracle Sec. Litig.*, 131 F.R.D. 688 (N.D. Cal. 1990) ..................................... 8

*In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592 (N.D. Cal. 2011) ........................ 14

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) .................................... 15

*Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208 (E.D. Mo. 2015) ............ 15

*Martin et al v. Merrill Lynch, Pierce, Fenner & Smith, Inc. et al*, 10-cv-04020-CW
   (N.D. Cal. 2011) .................................................................................................... 14

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. 2014) ........................ 12

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. 2011) ........ 15

*Satterfield v. Simon & Schuster, Inc.*, 06-cv-02893-CW (N.D. Cal. 2010) ............ 14

*Spine & Sports Chiropractic, Inc. v. Zirmed, Inc.*, 2015 WL 9413143 (W.D. Ky.
   2015) ...................................................................................................................... 15

*Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. 2011) ........................... 17

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014) ........... 15

*Young v. Polo Retail, LLC*, 2007 WL 951821 (N.D. Cal. 2007) ........................... 17

**STATUTES, RULES AND REGULATIONS**

47 U.S.C. § 227 ................................................................................................. *passim*

**OTHER SOURCES**

**Herbert B. Newberg & Alba Conte,** *Newberg on Class Actions*
 **(3rd ed. 1992)................................................................................................. 18**

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) ...................................................8

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 73 FED. REG. 6041-01, 6042 (FEB. 1, 2008) .......................................3

# I.    INTRODUCTION

The class action Settlement Agreement reached in this Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") case is an outstanding result that provides substantial payments to Settlement Class Members who file timely and valid claims. Indeed, under the terms of the Settlement, Defendant Price Self Storage Management, Inc. ("Defendant" or "PSS") has created a Settlement Fund in the amount of $450,000, from which Settlement Class Members may make claims for either $750 cash payments or $1,100 in certificates that can be used to pay down any outstanding balance on the Settlement Class Members' account with PSS or to secure future storage services with PSS. PSS will also be required to fix its text messaging system so as to properly honor and process opt-out requests. This Settlement Agreement thus presents a significant benefit to the Settlement Class Members and exceeds the typical amount awarded in TCPA class actions.

Such impressive results are the direct result of meaningful time, effort, and energy devoted to the litigation by Settlement Class Counsel and Class Representative Eric Mendez ("Plaintiff" or "Mendez"). Indeed, the Settlement Agreement and its favorable terms were made possible by Class Counsel's work investigating and prosecuting the case, and negotiating the terms through a formal, full-day mediation.

In recognition and compensation for this work, the Settlement Agreement calls for an attorneys' fee award to Class Counsel in the amount of $100,000 and an incentive award of $3,000 to Mendez for dutifully acting as the Class Representative. Such a fee is reasonable and falls below the benchmark for attorneys' fee awards in the Ninth Circuit when a common fund is created. Further, the fee is reasonable under the lodestar method based on the amount of effort and time expended by Class Counsel to bring, prosecute, and settle this action. Indeed, a lodestar crosscheck, a multiplier of only 1.03 is required to substantiate the fee

amount, which is within the range typically seen in similar settlements in the Ninth Circuit.

The Court should approve the incentive award for Mendez as well. Plaintiff is seeking an incentive award in the amount of $3,000, which is reasonable in terms of his role in bringing this suit, as without his participation as the named Plaintiff this Settlement would not have been reached in the first place.

For these reasons and as discussed further below, Plaintiff respectfully requests the Court enter an Order granting the instant Motion and approving the negotiated attorneys' fees and incentive award.

## II.    FACTUAL BACKGROUND AND TERMS OF THE SETTLEMENT

Prior to analyzing Class Counsel's fee request it is helpful to review the TCPA provisions at issue, the history of Mendez's experience with Price Self Storage text messages, and the litigation and settlement process that lead to the instant Settlement Agreement.

### A.    The TCPA and its implementing Regulations.

A brief summary of the law that forms the basis of Plaintiff's claims helps put the request for attorneys' fees in proper context. Congress enacted the TCPA in 1991 as a response to "[v]oluminous consumer complaints about abuses of telephone technology…." *Mims v. Arrow Financial Svcs's, LLC*, 132 S. Ct. 740, 744 (2012). In enacting the TCPA, Congress sought to "protect the privacy interests of telephone subscribers." *Satterfield v. Simon & Schuster*, *Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see also Mims,* 132 S. Ct. at 745. Courts have uniformly held that the TCPA applies with equal force to the making of text message calls as it does to the making of voice calls to cellular phones. *Satterfield,* 569 F.3d at 954.

To prevail, a plaintiff must show that a person: (1) made text message calls,

(2) using an Automatic Telephone Dialing System (ATDS)[1], (3) to a telephone number assigned to a cellular telephone service. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Whether Plaintiff and others provided their prior express consent to receive such text messages is an affirmative defense. *See e.g.*, *Grant v. Capital Mgmt. Srvs., L.P.*, No. 11-56200, 2011 WL 3874877, at *1 n.1 (9th Cir. Sept. 2, 2011) ("'[E]xpress consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof.").

Perhaps most relevant to this case is that under the TCPA consumers must have the ability to revoke consent once it has been provided. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; American Association of Healthcare Administrative Management, Petition for Expedited Declaratory Ruling and Exemption; et al*, CG Docket No. 20–278 (July 15, 2015) ("Omnibus TCPA Ruling" ¶ 47) ("[W]e clarify that a called party may revoke consent at any time and through any reasonable means"); *In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc.,* CG Docket No. 20–278 (Nov. 29, 2012) ("*SoundBite Ruling* "); *see also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272 (3d Cir. 2013) ("In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems."). Applied here, Mendez alleges that PSS's text messaging platform continued to send him (and others) text messages even after they had replied "STOP" so as to revoke their consent.

---

[1] An ATDS means "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC, in turn, has explained that equipment that dials or sends texts to a list of numbers is an ATDS, because "'the basic function of such dialing equipment' is the same—'the capacity to dial numbers without human intervention.'" *Gragg v. Orange Cab Co., Inc.,* C-12-0576, 2013 WL 1788479, at *2 (W.D. Wash. Apr. 26, 2013) (*citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed.Reg. 6041, 6042 (Feb. 1, 2008)).

The TCPA sets statutory damages in the amount of $500 per violation (trebled to $1,500 per text message if the violations are found to have been willful) and provides for injunctive relief prohibiting the further transmission of such messages. *See* 47 U.S.C. § 227(b)(3)(A-B).

Having put Plaintiff's claims in legal perspective, a review of the Plaintiff's claims and the process leading up to the Settlement is demonstrative of the fairness of the Agreement.

### B.    Summary of the Litigation, Mediation and Settlement.

In or around January 2013, Plaintiff Mendez entered into an agreement for a storage unit with PSS, and he provided his cellular telephone number to the company in connection with his application. (Compl. at 5.) Shortly thereafter, Defendant began sending messages to Plaintiff's cellular phone number. (*Id.*) A typical text message would read:

> Eric, Please contact Price Self Storage about your storage acct. To discuss call 19092530098 or Pat at http://cptl.me/3gf909 TXT STOP to Unsubscribe.

(*Id.*) Plaintiff received the same or similar text messages for approximately six months, when he decided that he no longer wished to receive them. (*Id.*) Following the instructions contained in the message, Plaintiff typed and sent "STOP" to unsubscribe from the texts. (*Id.*) Instead of honoring Plaintiff's request, however, PSS, through its text messaging vendor, continued to send Plaintiff text messages. When Mendez responded STOP, some of these messages stated that PSS could not receive messages and to call the number listed to stop receiving messages. (*Id.*) Mendez then called the number contained in the messages and an operator informed him that in order to stop the text messages he would need to physically appear at a PSS location. (*Id.* at 5-6.) After informing the operator that he would be unable to physically travel to PSS's location, the operator told Plaintiff that he could stop the text messages by replying "STOP." (*Id.* at 6.) Like before, Plaintiff's "STOP" response did not prevent the text messages from being sent to his cellphone.

In or around June or July of 2014, Plaintiff visited a PSS location to request his opt-out in person. (*Id.*) There, a PSS employee informed Plaintiff that he would be removed from the text message list. Despite this assurance, just a few weeks later Plaintiff again started receiving text messages from PSS's system. (*Id.*) Plaintiff replied "STOP" to no avail for over a year. Mendez went back to PSS to make another in-person request that his number be removed from PSS's list. (*Id.*)

Given his inability to make PSS stop texting him, Plaintiff filed his Class Action Complaint in the United States District Court for the Southern District of California on September 17, 2015 alleging PSS violated the TCPA by, through the use of an automatic telephone dialing system ("ATDS"), sending text messages to Plaintiff without Plaintiff's prior express consent and continued to send text messages after Plaintiff had replied "STOP", thereby revoking any previous supposed consent. (*See* Dkt. 1.)

Shortly following the effectuation of service, PSS's attorneys appeared in the case and reached out to have an early discussion regarding their respective views of the lawsuit's merits and pitfalls. This allowed Class Counsel to engage in a frank and transparent discussion about the case and enabled the Parties to set forth their respective views of the claims.

Counsel decided during these early discussions that private mediation. As part of this process, the Parties agreed to engage in informal discovery (under a protective order to safeguard confidentiality) regarding the size of the alleged class and the number of text messages at issue. The information disclosed during this process allowed Plaintiff to determine the size of the potential Class and to evaluate the probability of success and the value of the claims in question. (Declaration of Steven L. Woodrow, "Woodrow Decl.," attached hereto as Exhibit A, ¶ 9.)

The Parties agreed to mediate the case in Denver, Colorado. As such, the mediation was conducted on January 5, 2016 in Denver, Colorado and was overseen by the Honorable Matthew Railey (Ret.) of the Judicial Arbitration Group, Inc.

("JAG"). (*Id.* ¶ 10.) Following extensive discussions facilitated by Judge Railey, the Parties reached a Settlement Agreement. (*Id*. ¶ 11.) Only after the Settlement was agreed upon in principle with respect to the relief to be made available to the Settlement Class Members—here, substantial cash payments or certificates for future storage—did the parties negotiate for reasonable attorneys' fees for Class Counsel and an appropriate incentive award for Plaintiff Mendez. (*Id.* ¶ 13.)

Plaintiff moved for preliminary approval on March 7, 2016. (Dkt. 29.) Defendant filed its Non Opposition to the Motion for Preliminary Approval on May 9, 2016. (Dkt. 35.) The Court held a hearing on the Motion on May 12, 2016 (Dkt. 36) and granted Preliminary Approval on May 13, 2016. (Dkt. 37.)

## C.    Terms of the Settlement Agreement and Provision for Reasonable Attorneys' Fees and Incentive Awards.

The "Settlement Class" is defined as: all Persons in the United States or its territories who at any point from the beginning of time up through the date of this agreement: (a) received at least one text message on his or her cellular telephone from PSS; (b) responded to the text message with the response STOP; and (c) received at least one additional text message from PSS apart from any message confirming the Person's STOP request. (Settlement Agreement, Art. 1, ¶ 1.7.)

Class Counsel, through their efforts in the case in terms of pre-suit investigation, briefings, the exchange of informal discovery, conferences with opposing counsel, and the mediation process, were able to construct and negotiate a settlement that provides substantial monetary relief to Settlement Class members who file claims.

Under the terms of the Settlement, PSS has established a Settlement Fund consisting of $450,000 from which Class Members may make claims to receive individual cash payments of $750 or certificates for $1,100 to use in paying current or future storage fees with PSS. All payments made pursuant to the Settlement will come from the Settlement Fund, including: (1) the payment of all claims (submitted

1   and paid in accordance with the provisions below), (2) all administrative, notice, and

2   claims expenses (the "Settlement Administration Costs"), (3) the incentive awards

3   to the Class Representatives ("Incentive Award"), and (4) any award of reasonable

4   attorneys' fees and reimbursement of expenses ("Attorneys' Fees and Costs") as

5   approved by the Court. (Woodrow Decl. ¶ 21.)

6        In addition to the monetary relief to the Class Members, PSS has also agreed

7   to take action to prevent such unlawful actions to continue in the future. As such, it

8   has agreed to use commercially-reasonable efforts to honor requests from customers

9   to stop or opt-out of receiving text messages from the company for a period of six

10  (6) months from the Effective Date. In reality, PSS has essentially already addressed

11  this issue and has stopped such text messages in response to this litigation.

12       On May 13, 2016 the Court held a hearing on Plaintiff's Motion for

13  Preliminary Approval of Class Action Settlement and granted preliminary approval

14  to the Settlement Agreement. (Dkt. 37.) Following the granting of preliminary

15  approval, the Settlement Administrator caused Notice to be sent to the last known

16  mailing address of 312 Class Members. (Woodrow Decl. ¶ 16.) Each Class Member

17  was sent, via first-class mail, the approved Notice Form and Claim Form. (*Id*.)

18  Somewhat surprisingly, the initial response from the Class Members has been quiet,

19  with only a handful of claims having been filed. (*Id*. ¶ 17.) Because of this, Class

20  Counsel has obtained the Class List and is in the process of calling the Settlement

21  Class Members so as to encourage and assist them with filing claims. (*Id*. ¶ 18.)

22       The Settlement Agreement also provides that PSS will not oppose an

23  application submitted by Plaintiff for an incentive award to Mendez, as

24  representative of the Settlement Class, subject to Court approval, of three thousand

25  dollars ($3,000). (Settlement Agreement Art. 8, ¶ 8.3.) The Settlement Agreement

26  further states that PSS will not oppose an application submitted by proposed Class

27  Counsel for an award of one hundred thousand dollars ($100,000 USD) in

28  Attorneys' Fees and Expenses. (*Id.*, ¶ 8.1.)

As explained below, given the substantial relief obtained for the benefit of the Settlement Class, the Court should approve the requested attorneys' fees of $100,000, which represents 22.22% of the Settlement Fund established under the Settlement Agreement attained in this case.

## III.   ARGUMENT

The Supreme Court has "consistently recognized that a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). When a settlement creates a common fund that benefits the entire Class, the Court may use either the lodestar method or the percentage-of-recovery method when determining reasonable attorneys' fees. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("[b]ecause the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar….")); *In re Online DVD Rental Antitrust Litig.*, 2015 WL 846008, at *9 (9th Cir. Feb. 27, 2015).

While district "courts [ultimately] have discretion to employ either the lodestar method or the percentage-of-recovery method[,]" when a settlement produces a common fund for the class, courts in the Ninth Circuit most often employ a percentage-of-recovery method and awards class counsel a fee that constitutes a reasonable percentage of the fund. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) (holding that the percentage-of-recovery method is preferable to the lodestar method because it encourages efficient resolution by providing an incentive for early, yet reasonable settlement); *In re Oracle Sec. Litig.*, 131 F.R.D. 688, 689 (N.D. Cal. 1990); *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (citing a "groundswell of support for mandating a percentage-of-the-fund approach in common fund cases"); *see also Manual for*

*Complex Litigation* 4th Ed. 14.121 (2004) ("in practice, the lodestar method is difficult to apply, time consumer to administer, inconsistent in result . . . capable of manipulation . . . and creates inherent incentive to prolong the litigation").

Though a percentage-of-the-fund method is preferred, the Ninth Circuit has also determined the "application of the 'lodestar method' may provide a useful 'cross-check' as to the reasonableness of a given percentage award". *Aboudi v. T-Mobile USA, Inc.*, No. 12cv2169 BTM, 2015 WL 266137, at *7 (S.D. Cal. Aug. 18, 2015) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)). The lodestar method requires "multiplying the number of hours [Class Counsel] . . . reasonably expended on the litigation . . . by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Online DVD Rental Antitrust Litig.*, 2015 WL 846008, at *9. Indeed, "to restrict Class Counsel to the hourly rates they customarily charge for non-contingent work – where payment is assured – would deprive them of any financial incentive to accept contingent-fee cases which may produce nothing. (*Id.*) Courts have decided that, "multipliers of 1 to 4 are … appropriate in common fund cases." *Aboudi*, 2015 WL 266137 at *7.

As explained below, the requested attorneys fees in this case are supported when evaluated both as a percentage of the Settlement Fund achieved in this case as well as when viewed in light of Class Counsel's lodestar. As such, the Court should have little difficulty awarding the requested and agreed-upon attorneys' fees.

### A.   Class Counsel's Requested Fee Award is Demonstrably Reasonable—It Represents 22% of the Settlement Fund, Which is Less Than the 25% Benchmark for Attorneys' Fees in the Ninth Circuit.

Generally speaking, "the benefit to the Class is easily quantified in common-fund settlements . . . [and Courts may] . . .award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating lodestar." *In re Bluetooth*, 654 F.3d at 942. The Ninth Circuit has determined that 25% of the Settlement Fund is an appropriate benchmark for award of attorneys' fees,

depending on the quality of the representation by counsel, the risks of continued litigation, and the results achieved for the class. *Id.*, 654 F.3d. at 942 (citing *Six Mexican Workers,* 904 F.2d at 1311), which should be adjusted upward or downward only in "unusual circumstances." *Graulty*, 886 F.2d at 272[2]; *see also Aboudi*, 2015 WL 266137 at *7. Plaintiff's requested attorneys' fees of $100,000 from the $450,000 Settlement Fund is 22% and falls below this benchmark. This alone signals the reasonableness of the attorneys' fees.

Further, courts consider a non-exhaustive list of factors when assessing a request for attorneys' fees using the percentage method. These factors include: "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law, . . . the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 954 (9th Cir. 2015) (*citing Vizcaino,* 290 F.3d at 1047–50.

As explained below, each of these factors supports the requested fee award.

### 1.    Class Counsel Achieved an Exceptional Result for Class Members.

The first factor examines the benefits obtained for the Settlement Class Members. Given the substantial monetary relief negotiated here—in addition to the prospective relief—this factor heavily weights in favor the fee award requested.

Class Counsel has secured a common fund of $450,000 for the benefit of the Class, which provides Class Members with the option to choose between two alternatives: $750 in cash or a $1,100 PSS certificate to use towards outstanding or

---

[2] The percentage benchmark should be measured against the full fund established by the settlement and not the actual payout to the class. *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

future storage fees. (Settlement Agreement, Art. 2, ¶ 2.1.) This is an outstanding result which far exceeds the amount per claim typically available in TCPA settlements.

| CASE NAME | AMOUNT PER CLAIMANT |
|---|---|
| *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) | $20.00 to $40.00 |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) | $12.97; or, $17.29 voucher |
| *Kazemi v. Payless Shoesource, Inc.*, 09- cv-5142 (N.D. Cal.) | $25.00 voucher |
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) | $34.60 |
| *Steinfeld v. Discover Financial Services*, 12-cv-1118 JSW (N.D. Cal.) | $48.69 |
| *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 13525 (S.D. Cal. 2008) | $70.00 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290 BEN (S.D. Cal.) | $84.82 |
| *Wilkins, et al. v. HSBC Bank Nevada, N.A.*, 14 C 190 (N.D. Ill.) | $102.62 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (S.D. Cal.) | $100.00 |
| *Robles v. Lucky Brand Dungarees, Inc.*, 10-cv-4846-MMC (N.D. Cal.) | $100.00 |
| *Kramer v. B2Mobile*, 10-cv-2722 CW (N.D. Cal.) | $100.00 |
| *Lanza v. Upscale Events by Mosaic, LLC*, 13-cv-80093 DMM (S.D. Fla.) | $150.00 |
| *Ellison v. Steven Madden, Ltd.*, 11-cv-5935 (C.D. Cal.) | $150.00 |

| | |
|---|---|
| *Bayat v. Bank of the West*, C 13-2376 EMC (N.D. Cal.) | $151.00 |
| *Weinstein v. The Timberland Co., et al.,* 06-cv-454 (N.D. Ill.) | $150.00 |
| *Satterfield v. Simon & Schuster, Inc.,* 06-cv-2893 (N.D. Cal.) | $175.00 |
| *Rojas v. Career Education Corporation*, 10-cv-5260 (N.D. Ill.) | $200.00 |
| *Lozano v. Twentieth Century Fox Film Corp.*, 09-cv-6344 (N.D. Ill.) | $200.00 |

The instant Settlement is more than reasonable in light of these other settlements under the TCPA that have been approved as fair, reasonable and adequate. *See also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (discussing range of acceptable TCPA class settlements based on per claimant recovery, approving $34.60 per claiming member); *Rose v. Bank of Am. Corp.*, 5:11-CV-02390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant).

It is important to recall that litigating a nationwide class action requires "unique legal skills and abilities." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Although the skill required to successfully prosecute a class action is evident, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained". *In re Heritage Bond Litig.*, Case No. 02-ML-1475-DL, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005). Additionally, the quality and expertise of opposing counsel is important to consider. *See Cohorst v. BRE Props., Inc.*, Case No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *20 (S.D. Cal. Nov. 14, 2011).

As discussed above, Class Counsel has negotiated a settlement in this case after a full-day mediation session that confers substantial relief to the Class. This result was accomplished despite formidable opposition by Defendant's attorneys at Troutman Sanders LLP.

Hence, the Settlement represents a substantial recovery for the Class and it was made possible through the skill employed by Class Counsel. As such, attorneys' fees of 22.22% of the $450,000 Settlement Fund, or $100,000, is manifestly reasonable and this factor supports granting the request for attorneys' fees.

### 2. Class Counsel Faced Meaningful Risk in Taking the Case.

Though Plaintiff's claims are strong, this case involves complicated legal and factual issues and further litigation brings risk that the ultimate result to the Class could be less beneficial to the Class.

Class Counsel has prosecuted this matter on a contingency basis. (Woodrow Decl. ¶ 27.) At the risk of receiving nothing in return, Class Counsel initiated and diligently prosecuted this case, investing substantial time and resources. (*Id.*) Ultimately, after balancing the strength of the claims with the hurdles ahead, Plaintiff and Class Counsel concluded that the relief available through the Settlement was the best course of action for the Class. (*Id.* ¶ 28.)

This is particularly true given the strength of the relief made available. Under the TCPA, Class Members would be entitled to $500 per violation, or $1,500 if willfulness were to be proven. *See* 47 U.S.C. 227(c)(5). Under the Settlement, each Class Member may choose $750 in cash or $1,100 worth of storage. (Settlement Agreement, Art. 2, ¶ 2.1.) Thus, proceeding to trial would only garner a marginal benefit, if any.

Accordingly, the significant risk that the Class may have recovered substantially less (or perhaps nothing at all) were the case to proceed supports the reasonableness of Class Counsel's requested fee award.

### 3.    The Benefits Extend Beyond the Settlement Fund.

Additionally, PSS has agreed that it will take commercially reasonable efforts to honor all STOP requests received by Persons to whom PSS sends text messages. (*Id.* ¶ 2.2.) This type of relief is commonly considered when weighing the benefit to the Class. *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (common fund doctrine "must logically extend, not only to litigation that confers a monetary benefit on others, but also to litigation which corrects or prevents an abuse which would be prejudicial to the rights and interests of those others."). As such, this factor supports the requested fees.

### 4.    An Award of 22.22% Falls Within the Market Rate.

The requested attorneys' fees also fall within the market rate. As indicated above, the Ninth Circuit has determined that 25% of the Settlement Fund is an appropriate benchmark for award of attorneys' fees. *Aboudi*, 2015 WL 266137 at *7; *see also In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming 33 1/3% fee); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (affirming 28% fee); *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) (affirming 33% fee); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (noting that the typical fee in this Circuit is 30-33% of the fund); *In re Activision Sec. Litig.*, 723 F. Supp. at 1377-78 ("nearly all common fund awards range around 30%"). This holds true in TCPA class action settlements. *See Satterfield v. Simon & Schuster, Inc.*, (06-cv-02893-CW) (Dkt. No. 132) (N.D. Cal. Aug. 8, 2010)*; see also Martin et al v. Merrill Lynch, Pierce, Fenner & Smith, Inc. et al*, (10-CV-04020-CW) (Dkt. No. 95) (N.D. Cal. Nov. 22, 2011) (granting requested attorneys' fees of 22.9% of overall settlement fund).

Indeed, attorneys in TCPA class action settlements are routinely awarded even higher percentages. TCPA class action settlements are approved routinely where the attorneys' fees are one-third (33%), which is substantially higher than the

22.22% sought here. *See Landsman & Funk, P.C. v. Skinder-Strauss Associates,* No. 15-2485, 2016 WL 611441, at *3 (3d Cir. Feb. 16, 2016) (unpublished decision) (affirming award of one-third of reversionary settlement fund in TCPA class action settlement where requested fees were twice the amount of class counsel's lodestar); *Bridgeview Health Care Ctr., Ltd. v. Jerryclark,* No. 09 C 5601, 2015 WL 4498741, at *2 (N.D. Ill. July 23, 2015) (awarding one-third of common fund in TCPA class action); *Hageman v. AT&T Mobility LLC*, No. CV 13-50- BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving fee award of "$15 million, or one-third of the common fund recovery" in TCPA class action settlement against AT&T); *Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am*., No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (awarding 33% of common fund in multimillion dollar TCPA class action); *Vandervort v. Balboa Capital Corp*., 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) ("Accordingly, the Court awards attorney's fees and costs in the amount of $1.1 million, or 33% of the $3.3 million settlement fund ceiling amount."); *Lees v. Anthem Ins. Companies Inc*., No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (Approving fees in TCPA settlement representing "34% of the actual fund available to Class Members."); *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 501 (N.D. Ill. 2015), appeal dismissed (Jan. 27, 2016), appeal dismissed (Feb. 1, 2016), appeal dismissed (Feb. 3, 2016) (awarding 36% of common fund in TCPA class action settlement); *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc*., No. 3:13-CV- 00489, 2015 WL 9413143, at *1 (W.D. Ky. Dec. 22, 2015) (approving one third of fund as attorney's fees).

As such, the market rate also supports the requested fees.

### 5. Class Counsel Faced Costs and Were Unable to Take Other Cases While Prosecuting this Matter.

This factor, which examines the burdens to Class Counsel, also supports granting the requested attorneys' fees. Here, Class Counsel advanced all costs, including filing fees, mediation costs, and travel to San Diego for the preliminary

1  (and final) approval hearing. (Woodrow Decl. ¶ 29.) Had the case proceeded, Class

2  Counsel were prepared to retain experts to perform an analysis and review of PSS's

3  text messaging platform to identify the root cause of the issue that lead it to send text

4  messages to people who had responded "STOP." (*Id*.)

5      Class Counsel's work in this case also prevented the attorneys from working

6  on other matters. (*Id*. ¶ 30.) Class Counsel's firms are not large outfits and must be

7  careful regarding the cases they take. (*Id*.) Having said that, investing the time into

8  researching and prosecuting a federal class action necessarily means that attention is

9  diverted away from other cases. (*Id*.) It is not as if this case was settled with a

10  handful of telephone calls and barely interrupted Class Counsel's routine. (*Id*.)

11  Rather, Class Counsel spent meaningful attorneys' time investigating the claims,

12  preparing for the and participating in the mediation, drafting all settlement

13  documents, and presenting the Settlement to the Court for preliminary approval.

14  (*Id*.)

15      This factor therefore supports the requested fees as well.

16        **6.**    **Class Counsel Prosecuted this Case on a Contingent Basis.**

17      The final factor considers whether the case has been litigated on a contingent

18  basis. Put simply, the nature of Class Counsel's representation also supports the

19  requested fee award. Contingent fees allow competent counsel to accept cases and

20  provide adequate representation in class actions and are a basis for providing a

21  larger fee than if the matter was billed on a flat or hourly basis. *In re OmniVision*,

22  559 F. Supp. 2d. at 1047 (citing *In re Wash. Pub. Power Supply Systems Securities*

23  *Litigation,* 19 F.3d 1291, 1299-1300 (9th Cir. 1994)). "It is an established practice in

24  the private legal market to reward attorneys for taking the risk of non-payment by

25  paying them a premium over their normal hourly rates for winning contingency

26  cases…as a legitimate way of assuring competent representation for plaintiffs who

27  could not afford to pay on an hourly basis regardless whether they win or lose." *In*

28  *re Wash.*, 19 F.3d at 1299.

At the time of filing this lawsuit on a contingent fee basis, Class Counsel knew they may spend hundreds of hours of attorney time in contested litigation with no guarantee of recovery. To date, they have, in fact, devoted hundreds of hours representing Plaintiff and the Class without compensation and spent time on the issues that may have been spent on cases or work matters. (Woodrow Decl. ¶ 32.) And as explained further below, Class Counsel has also advanced the costs of this suit without reimbursement.

Thus, given the exceptional results achieved when compared with other TCPA class action settlements, the skill and efficiency with which the case has been litigated, the awards in other cases, and the contingent nature of the representation, a 22.22% fee award is plainly justified here.

**B.      The Requested Fee is Also Reasonable Under the Lodestar Method.**

The requested fee award of $100,000 is also reasonable when applying the lodestar method—either as a cross-check to the percentage-of-the-fund approach or as the primary method of calculation.

The "lodestar method" calculates attorneys' fees by multiplying the number of hours that class counsel reasonably expended on the litigation by an hourly rate that takes into consideration the experience of the lawyers and their geographic location. *Staton v. Boeing Co*., 327 F.3d 938, 965 (9th Cir. 2003). When performing a lodestar cross-check, mathematical exactitude is not required. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) (citing *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 306-07 (3d Cir. 2005)); *Thieriot v. Celtic Ins. Co*., No. C-10-04462-LB, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011); *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *6 (N.D. Cal. Mar. 28, 2007) ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.") Further, courts typically apply a multiplier to the lodestar to account for class counsel taking on the litigation

1   at a substantial risk of non-payment. *Vizcaino*, 290 F.3d at 1051.

2   In this case, and as reflected in the chart below, Class Counsel expended a

3   total of 232.6 firm hours investigating, litigating, and settling this lawsuit for a total

4   current lodestar of $83,894.

| Attorney Name/Firm | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Steven Woodrow | Partner | $430 | 35.7 | $15,351 |
| Patrick Peluso | Partner | $330 | 86.1 | $28,413 |
| Stefan Coleman | Partner | $450 | 83.0 | $37,350 |
| Law Clerks | Law Clerks | $100 | 27.8 | $2,780 |
| **LODESTAR** | | | 232.6 | $83,894 |

11  (Woodrow Decl. ¶ 31; *see also* Coleman Decl., attached as Ex. B, ¶ 11.) On top of

12  this, Class Counsel projects expending an additional $10,000 - $15,000 in time

13  seeing the Settlement through to final approval, which includes calling Settlement

14  Class Members on the class list and assisting them with the filing of their claims.

15  (Woodrow Decl. ¶ 33.)

16  Plaintiff's counsel's hourly rates are well below the market rate for

17  comparable attorneys in this District. *See Fontes v. Heritage Operating, L.P.*, No.

18  14CV1413-MMA (NLS), 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016)

19  (approval counsel's hourly rates ranging from $495-$695 per hour). Rather, each

20  attorney's hourly rate is the same as those charged by hourly-paying clients.

21  (Woodrow Decl. ¶ 34.) Moreover, Class Counsel has diligently attempted to avoid

22  duplication of effort and to delegate work efficiently. (*Id*. ¶ 35.)

23  While a lodestar amount is presumptively reasonable, it may be adjusted

24  upward by a multiplier typically ranging between 1 and 4 to account for the risk

25  faced in taking the case. *See* Alba Conte & Herbert B. Newberg, *Newberg on Class*

26  *Actions*, 14:03 (3d Ed. 1992) (recognizing that multipliers of one to four are

27  frequently awarded). In fact, the Ninth Circuit has found an abuse of discretion not

28  to apply a multiplier in certain matters. *Fischel v. Equitable Life Assur. Soc'y of*

*U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) ("It is an abuse of discretion to fail to apply a risk multiplier, however, when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky").

Here, Class Counsel's requested fee award of $100,000 requires a multiplier of only 1.03 of Counsel's lodestar to justify. This is calculated by taking the fee request and subtracting the out of pocket expenses. Here that is $100,000 - $3,108.59 = 96,891.41. The current lodestar ($83,894) plus the additional $10,000 in anticipated future lodestar are then divided (96,891.41/93,894) which equals 1.03. As such, only a multiplier of 1.03 to Class Counsel's lodestar is required to justify the requested attorneys' fees, which squarely falls in between the 1 to 4 range for typical lodestar multipliers.[3]

A multiplier is warranted here. Class Counsel expended time and effort researching the law, drafting and editing briefs, motions, mediation documents, and attending a full-day mediation session—all without guarantee of payment. (Woodrow Decl. ¶ 30.) Indeed, the risks present in a nationwide class action are manifest—issues abound that can doom a case, including legal issues affecting the class, problems with the named plaintiff, discovery pitfalls, and other risks. Yet the effort and skill employed by Class Counsel paid off: the Settlement Agreement makes substantial relief available to Settlement Class Members.

Considering the rates Class Counsel typically bills in their normal practice fall below those charged in the relevant market and do not account for the risks posed by the case, Class Counsel would have been hard pressed to have agreed to prosecute this matter absent the prospect of a multiplier. (*Id*. ¶ 36.) As such, a multiplier is

---

[3] Taking only the current lodestar would result in a multiple of 1.15, which is plainly still at the lower end of the range. (96,685.41/83,894 = 1.15)

warranted, and here it is currently only 1.15 (and may indeed go negative by the time the Settlement Agreement is seen through to its final conclusion).

Application of the lodestar analysis thus confirms that the requested fee is reasonable and should be approved. Class Counsel's firms expended 232.6 hours for a lodestar of $83,894, which only results in a 1.15 multiplier (which will go lower). The fees are thus reasonable under both methods of review.

### C.   Class Counsel Also Incurred $3,109.59 in Expenses.

As indicated, Class Counsel incurred costs of $3,109.59 fighting and settling the case. (*Id.* ¶ 37.) These costs were all tailored to the case. None are excessive; rather, each was needed to advance the litigation or Settlement through the mediation. (*Id.*) The expenses should be approved as a result.

### D.   The Court Should Approve the Requested Incentive Award.

Finally, to compensate class representatives for the work they do on behalf of absent class members, courts typically grant requests for incentive awards. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Incentive awards are commonplace in class actions and are intended to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to action as a private attorney general." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011).

Here, Plaintiff seeks an incentive award of $3,000, which is reasonable considering his involvement was essential to the ultimate success of the settlement and his continued willingness to assume the responsibilities expected of class representatives, including protecting the interests of the Class instead of simply furthering his own interests. (Woodrow Decl. ¶ 38.) Such an award is comparable to awards issued in this Circuit. *See Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377, 2015 WL 1289342, at *16 (N.D. Cal. Mar. 20, 2015) (finding that incentive awards "typically range from $2,000 to $10,000."); *Hopson v. Hanesbrands Inc.*,

No. CV-08-0844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving incentive award of $5,000 in $408,420 settlement).

Accordingly, the agreed-upon collective incentive award of $3,000 is reasonable and should also be approved by the Court.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff Mendez respectfully requests the Court enter an Order awarding attorneys' fees in the amount of $100,000 and an incentive award in the amount of $3,000, and provide such other and further relief as the Court deems reasonable and just.

Dated: July 1, 2016                    Respectfully Submitted,

                                       **Eric Mendez**, individually and on behalf
                                       of the Settlement Class

                                       /s/ Steven L. Woodrow
                                       One of Plaintiff's Attorneys

Richard T. Drury
richard@lozeaudrury.com
Rebecca Davis
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Steven L. Woodrow*
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso*
(ppeluso@woodrowpeluso.com)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman, Esq.
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427

law@stefancoleman.com

*pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on July 1, 2016, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


/s/ Steven L. Woodrow