Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiffs*
ERIC MENDEZ and the proposed class

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC MENDEZ, individually and on behalf of a class of similarly situated individuals,<br><br>       Plaintiff,<br><br>       v.<br><br>PRICE SELF STORAGE MANAGEMENT, INC.,<br><br>       Defendant. | Case No. 3:15-cv-02077-AJB-JLB<br><br>**MOTION FOR AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: August 22, 2016<br>Time: 3:00 p.m.<br><br>The Honorable Anthony J. Battaglia |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

I.    INTRODUCTION ........................................................................... 1

II.   THE FACTS, THE LAW, AND THE LITIGATION HISTORY ............ 1

III.  KEY TERMS OF THE SETTLEMENT AGREEMENT ..................... 5

    A.  Class Definition ................................................................. 5

    B.  Settlement Fund and Monetary Payments .............................. 5

    C.  Prospective Service Enhancements ....................................... 6

    D.  Notice and Administrative Expenses ..................................... 6

    E. Class Representative Incentive Award ..................................... 6

    F. Reasonable Attorneys' Fees and Expenses................................. 6

    G. The Release........................................................................ 6

IV.  THE NOTICE COMPORTS WITH DUE PROCESS ............................ 7

V.   THE SETTLEMENT WARRANTS FINAL APPROVAL ...................... 9

    A.  The Strength of Plaintiff's Case ........................................... 11

    B.  The Risk of Continued Litigation ......................................... 13

    C.  The Risk of Maintaining Class Action Status........................... 14

    D.  The Amount Offered in Settlement ....................................... 15

    E.  The Extent of Discovery Completed and the Stage of Litigation ........ 19

    F.  The Experience and Views of Counsel................................... 20

    G. The Presence of a Governmental Participant ......................... 21

    H. The Reaction of Class Members to Date............................... 21

    I. There is No Evidence of Collusion ......................................... 22

VI. CONCLUSION.......................................................................... 25

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................................7

*Evans v. Jeff D.*, 475 U.S. 717, 106 S. Ct. 1531 (1986) ............................................7

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012) ........................................2, 3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...........................................15

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Churchill Vill, L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ...............10, 13, 21

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................10

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ....................................3

*Gene and Gene, LLC v. Biopay LLC*, 541 F.3d 318 (5th Cir. 2008) ........................12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................16

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011). ......................................................22, 23, 24, 25

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .............................21

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ...............................20

*Lane v. Facebook, Inc.*, 696 F.3d (9th Cir. 2012) ...........................................10, 17

*Malchman v. Davis*, 761 F.2d 893 (2nd Cir. 1985) ...................................................24

*Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338 (9th Cir. 1980)........................7

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)............9, 10

*Rannis v. Recchia*, 380 F. Appx. 646 (9th Cir. 2010) .................................................7

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...........................14, 17

*Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009) ........................3

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) .........................................................7

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................23

**UNITED STATES DISTRICT COURT CASES**

*Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ................12, 15

*Bellows v. NCO Financial Systems, Inc.*,
    2008 WL 4155361, at*1 (S.D. Cal. Sept. 5, 2008)..................................13, 19

*Bridgeview Health Care Ctr. Ltd. v. Clark,* 2011 WL 4585028 (N.D. Ill. 2011) ....12

*Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848 (N.D. Cal. 2010) ...........22

*Forcellati v. Hyland's Inc.,* 2014 WL 1410264 (C.D. Cal. 2014)............................22

*Gardner v. GC Servs., LP,* 2012 WL 1119534 (S.D. Cal. 2012) .......................15, 19

*Garner v. State Farm Mut. Auto Ins. Co.,*
    2010 WL 1687832 (N.D. Cal. 2010) .......................................................*passim*

*Green v. DirecTv, Inc.,* 2010 WL 4628734 (N.D. Ill. 2010)...................................12

*Griffith v. Consumer Portfolio Serv., Inc.,* 838 F. Supp. 2d 723 (N.D. Ill. 2011) ....12

*Harris v. Vector Mktg. Corp.,* 2011 WL 1627973 (N.D. Cal. 2011) .......................19

*Hartless v. Clorox Co., 273 F.R.D. 630, 638 (S.D. Cal. 2011)*.................................24

*In re Capital One Tel. Consumer Prot. Act Litig.,*
    80 F. Supp. 3d 781 (N.D. Ill. 2015) .................................................................18

*In re Compact Disc. Minimum Advertised Price Antitrust Litig.,* .............................
    370 F. Supp. 2d 320 (D. Me. 2005) .................................................................22

*In re HP Laser Printer Litig.,* 2011 WL 3861703 (C.D. Cal. 2011)..................22, 25

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.,*
    847 F. Supp. 2d 1253 (S.D. Cal. 2012) .............................................................3

*In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036 (N.D. Cal. 2008)........13, 19, 20

*In re Patriot Am. Hospitality Inc. Sec. Litig.,*
    2005 WL 3801594 (N.D. Cal 2005) .................................................................19

*In re TJX Cos. Retail Sec. Breach Litig.,* 584 F. Supp. 2d 395 (D. Mass. 2008)......22

*Jaffe v. Morgan Stanley & Co.,* 2008 WL 346417 (N.D. Cal. 2008).......................16

*Kim v. Space Pencil, Inc.,* 2012 WL 5948951 (N.D. Cal. 2012) .............................13

*Kramer v. Autobytel, Inc.,* 759 F. Supp. 2d 1165 (N.D. Cal. 2010)..........................3

*Kramer v. Autobytel, Inc.,* No. 10-cv-2722 (N.D. Cal. 2011) ..................................24

*Lee v. Stonebridge Life Ins. Co.,* 289 F.R.D. 292 (N.D. Cal. 2013) ...................12, 15

*Martin v. AmeriPride Servs., Inc.,* 2011 WL 2313604 (S.D. Cl. 2011)........13, 16, 20

*McKinnie v. JP Morgan Chase Bank, N.A.,*
    678 F. Supp. 2d 806 (E.D. Wis. 2009)...............................................................23

*Nabal v. BJ's Wholesale Club, Inc.,* 2002 WL 32349137 (E.D. Pa. 2002)..............23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................9, 11, 20, 21

*Odrick v. UnionBancal Corp.,* 2012 WL 6019495 (N.D. Cal. 2012) ......................19

*Rose v. Bank of Am. Corp.,* 2014 WL 4273358 (N.D. Cal. 2014) ...........................18

*Ross v. Trex Co., Inc.,* 2013 WL 791229 (N.D. Cal. 2013) .......................................7

*Schiller v. David's Bridal, Inc.,* 2012 WL 2117001 (E.D. Cal. 2012) .....................11

*Shames v. Hertz Corp.,* 2012 WL 5392159 (S.D. Cal. 2012) ............................11, 22

*Strong v. BellSouth Telcoms., Inc.,* 173 F.R.D. 167 (W.D. La. 1997) ....................22

*Thomas v. Taco Bell Corp.,* 879 F. Supp. 2d 1079 (C.D. Cal. 2012).......................12

*Wren v. RGIS Inventory Specialists,* 2011 WL 1230826 (N.D. Cal. 2011) ..........9, 25

*Young v. Polo Retail, LLC,* 2007 WL 951821 (N.D. Cal. 2007)...............................14

**CALIFORNIA STATE COURT CASES**

*In re Consumer Privacy Cases,* 175 Cal. App. 4th 545 (Cal. Ct. Appl. 2009) .........24

**STATUTES, RULES AND REGULATIONS**

28 U.S.C. § 1715................................................................................................8

47 U.S.C. § 227.........................................................................................*passim*

Fed. R. Civ. P. 23.....................................................................................7, 8, 9

**OTHER SOURCES**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002).........7

American Association of Healthcare Administative Management, Petition for
    Expedited Declaratory Ruling and Exemption; et al, CG Docket No. 20-278
    (July 15, 2015)...............................................................................................3

Declaratory Ruling as to Petition of SoundBite Communications, Inc., CG Docket
    No. 20-278 (Nov. 29, 2012) ..........................................................................7

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist
    and Plain Language Guide* 3 (2010)..............................................................7

Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991, 73 FED. REG. 6041-01, 6042 (FEB. 1, 2008)..................................3

## I.  INTRODUCTION

In accordance with the Court's Preliminary Approval Order, Notice of the class action Settlement Agreement reached in this Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") case has been sent to the Settlement Class—and the response has been overwhelmingly positive. At present **18.73%** of the Settlement Class has filed claim forms seeking relief—a high claims rate for consumer class actions and one that reflects the strength of the relief obtained for the Settlement Class Members. Indeed, under the terms of the Settlement, Defendant Price Self Storage Management, Inc. ("Defendant" or "PSS") has created a Settlement Fund in the amount of $450,000 from which Settlement Class Members may make claims for either $750 cash payments or $1,100 in certificates that can be used to pay down any outstanding balance on the Settlement Class Members' account with PSS or to secure future storage services with PSS. PSS has also agreed to fix its text messaging system so as to properly honor and process requests to have the messages "STOP". This Settlement Agreement thus presents a significant benefit to the Settlement Class Members and exceeds the typical amount awarded in TCPA class actions.

Meanwhile, no one has objected to the Settlement and no Class Member has filed a request to be excluded. As such, and as explained further below, the Court should grant final approval to the Settlement consistent with the Order attached hereto as Exhibit A.

## II.  THE FACTS, THE LAW, AND THE LITIGATION HISTORY

In or around January 2013, Plaintiff Mendez entered into an agreement for a storage unit with PSS, and he provided his cellular telephone number to the company in connection with his application. (Compl. at 5.) Shortly thereafter, Defendant began sending messages to Plaintiff's cellular phone number. (*Id.*) A typical text message would read:

> Eric, Please contact Price Self Storage about your storage acct. To discuss call 19092530098 or Pay at http://cptl.me/3gf909 TXT STOP to Unsubscribe.

(*Id.*)

Plaintiff received the same or similar text messages for approximately six (6) months, when he decided that he no longer wished to receive them. (*Id.*) Following the instructions contained in the message, Plaintiff typed and sent "STOP" to unsubscribe from the texts. (*Id.*) Instead of honoring Plaintiff's request, however, PSS, through its text messaging vendor, continued to send Plaintiff text messages. When Mendez responded "STOP", some of these messages stated that PSS could not receive messages and to call the number listed to stop receiving messages. (*Id.*) Mendez then called the number contained in the messages and an operator informed him that in order to stop the text messages he would need to physically appear at a PSS location. (*Id.* at 5-6.) After informing the operator that he would be unable to physically travel to PSS's location, the operator told Plaintiff that he could stop the text messages by replying "STOP." (*Id.* at 6.) Like before, Plaintiff's "STOP" response did not prevent the text messages from being sent to his cellphone.

In or around June or July of 2014, Plaintiff visited a PSS location to request his opt-out in-person. (*Id.*) There, a PSS employee informed Plaintiff that he would be removed from the text message list. Despite this assurance, just a few weeks later Plaintiff again started receiving text messages from PSS's system. (*Id.*) Plaintiff replied "STOP" to no avail for over a year. Mendez went back to PSS to make another in-person request that his number be removed from PSS's list. (*Id.*)

Congress enacted the TCPA in response to "voluminous consumer complaints" concerning "intrusive nuisance calls" made by automated telemarketing practices that it determined intruded upon the privacy of individuals. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). Through the TCPA, Congress made it "unlawful . . . to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service. . . ." 47 U.S.C.

§ 227(b)(1)(A)(iii); *Mims*, 132 S. Ct. at 745.  Subsequent decisions have held that the TCPA applies with equal force to the making of text message calls as it does to the making of voice calls to cellular phones.  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1170 (N.D. Cal. 2010). The result of violating the TCPA is a statutory penalty of $500 per message or call, as well as the availability of an injunction prohibiting the further transmission of such messages.  47 U.S.C. § 227(b)(3)(A-B).  In addition, liability under the TCPA extends not only to the entity that physically transmitted the text messages, but also to any party responsible for the text messages.  *Kramer*, 759 F. Supp. 2d at 1170; *In re Jiffy Lube Int'l, Inc. Text Spam Litig*, 847 F. Supp. 2d 1253, 1256-58 (S.D. Cal. 2012).

Critically, under the TCPA consumers must have the ability to revoke consent once it has been provided. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; American Association of Healthcare Administrative Management, Petition for Expedited Declaratory Ruling and Exemption; et al*, CG Docket No. 20–278 (July 15, 2015) ("Omnibus TCPA Ruling" ¶ 47); *In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc.,* CG Docket No. 20–278 (Nov. 29, 2012) ("*SoundBite Ruling* "); *see also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272 (3d Cir. 2013) ("In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems.").

The TCPA sets statutory damages in the amount of $500 per violation (trebled to $1,500 per text message if the violations are found to have been willful) and provides for injunctive relief prohibiting the further transmission of such messages. *See* 47 U.S.C. § 227(b)(3)(A-B).

Given his inability to make PSS stop texting him, Plaintiff filed his Class Action Complaint in the United States District Court for the Southern District of

California on September 17, 2015 alleging PSS violated the TCPA by, through the use of an automatic telephone dialing system ("ATDS"), sending text messages to Plaintiff without Plaintiff's prior express consent and continued to send text messages after Plaintiff had replied "STOP", thereby revoking any previous supposed consent. (*See* Dkt. 1.)

Shortly following the effectuation of service, PSS's attorneys appeared in the case and reached out to have an early discussion regarding their respective views of the lawsuit's merits and pitfalls. This allowed Class Counsel to engage in a frank and transparent discussion about the case and enabled the Parties to set forth their respective views of the claims.

Counsel decided during these early discussions that private mediation would be helpful in potentially resolving the case. As part of this process, the Parties agreed to engage in informal discovery (under a protective order to safeguard confidentiality) regarding the size of the alleged class and the number of text messages at issue. The information disclosed during this process allowed Plaintiff to determine the size of the potential Class and to evaluate the probability of success and the value of the claims in question. (Declaration of Steven L. Woodrow, "Woodrow Decl.," attached hereto as Exhibit A, ¶ 4.)

The Parties agreed to mediate the case in Denver, Colorado. As such, the mediation was conducted on January 5, 2016 in Denver and was overseen by the Honorable Matthew Railey (Ret.) of the Judicial Arbitration Group, Inc. ("JAG"). (Woodrow Decl. ¶ 6.) Following extensive discussions facilitated by Judge Railey, the Parties reached a Settlement Agreement. (Woodrow Decl. ¶ 7.) Only after the Settlement was agreed upon in principle with respect to the relief to be made available to the Settlement Class Members—here, substantial cash payments or certificates for future storage—did the parties negotiate for reasonable attorneys' fees for Class Counsel and an appropriate incentive award for Plaintiff Mendez. (Woodrow Decl. ¶ 8.)

Plaintiff moved for preliminary approval on March 7, 2016. (Dkt. 29.) Defendant filed its Non Opposition to the Motion for Preliminary Approval on May 9, 2016. (Dkt. 35.) The Court held a hearing on the Motion on May 12, 2016 (dkt. 36) and granted Preliminary Approval on May 13, 2016. (Dkt. 37.) On July 1, 2016 Class Counsel filed a motion seeking approval of the incentive award and for reasonable attorneys' fees. (Dkt. 38.) In accordance with the Settlement Agreement and the PAO, Class Counsel posted an electronic copy of their motion for reasonable attorneys' fees on Class Counsel's website as well. (Woodrow Decl. ¶ 13.)

## III.   KEY TERMS OF THE SETTLEMENT AGREEMENT

   **A.     Class Definition:** The Class is defined to include:

> All persons in the United States of America or its territories who at any point from September 15, 2011 through the date of the Settlement Agreement: (a) received at least one text message on his or her cellular phone; (b) responded to the text message with the response STOP, and (c) received at least one additional text message from PSS apart from any message confirming the Person's STOP request.

(Settlement § 1.7.)

   **B.     Settlement Fund and Monetary Payments.** Under the terms of the Settlement, PSS has agreed to establish a Settlement Fund consisting of $450,000 from which Class Members may make claims to receive individual cash payments of $750 or certificates for $1,100 to use in paying current or future storage fees with PSS. (Settlement § 1.36.)

   All payments made pursuant to the Settlement will come from the Settlement Fund, including: (1) the payment of all claims (submitted and paid in accordance with the provisions below), (2) all administrative, notice, and claims expenses (the "Settlement Administration Costs"), (3) the incentive awards to the Class Representatives ("Incentive Award"), and (4) any award of reasonable attorneys' fees and reimbursement of expenses ("Attorneys' Fees and Costs") as approved by the Court. (Woodrow Decl. ¶ 10.)

**C.   Prospective Service Enhancements**. In addition to the monetary relief, PSS has also agreed to take action to prevent such unlawful actions to continue in the future. As such, it has agreed to use commercially-reasonable efforts to honor requests from customers to stop or opt-out of receiving text messages from the company for a period of six (6) months from the Effective Date. (Settlement § 2.2.) In reality, PSS already addressed this issue and stopped such text messages after this litigation was initiated. (Woodrow Decl. ¶ 11.)

**D.   Notice and Administrative Expenses.** The Settlement requires that PSS pay the costs for disseminating notice to the Settlement Class as well as for all other administrative expenses. Such amounts are included within, and are to be paid from, the $450,000 Settlement Fund. (Settlement § 1.36.)

**E.   Class Representative Incentive Award.** In recognition of his service to the Settlement Class and in stepping forward to help secure the relief obtained via the instant Settlement, the Settlement calls for the Named Plaintiff/Class Representative, Eric Mendez, to receive an Incentive Award of $3,000. (Settlement § 8.3.)

**F.   Reasonable Attorneys' Fees and Expenses.** The Settlement further calls for Class Counsel to receive reasonable attorneys' fees as compensation for their work in obtaining the relief secured by the Settlement, including the significant monetary payments and the prospective relief. (Settlement § 8.1.) Settlement Class Counsel filed their Motion for Reasonable Attorneys' Fees and for Reimbursement of Expenses on July 1, 2016 in which they substantiated their fees and expenses in the litigation. (Dkt. 38.)

**G.   The Release.** In exchange for the relief set forth above, the Settlement Class Members who do not exclude themselves release PSS from all TCPA claims, including comparable state law claims that could have been brought in the litigation. (Settlement § 1.30.)

1    Such terms are undeniably favorable to the Settlement Class. Accordingly,

2  and given the positive response from the class members, the Court should grant final

3  approval.

4  **IV.   THE NOTICE COMPORTS WITH DUE PROCESS**

5    Before granting final approval of this Settlement, the Court is obligated to

6  determine whether the notice provided to the Class is "the best notice that is

7  practicable under the circumstances, including individual notice to all members who

8  can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord*

9  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Silber v. Mabon,* 18 F.3d

10 1449, 1454 (9th Cir. 1994). These safeguards ensure that notice to the class

11 complies with both Rule 23 and the demands of due process. *Rannis v. Recchia*, 380

12 F. App'x 646, 650 (9th Cir. 2010). Comporting with these standards does not

13 require that every individual class member receive *actual* notice—due process

14 mandates only that the notice be "reasonably calculated under the circumstances to

15 apprise [class members] of the pendency of the class action and give [them] a

16 chance to be heard." *Ross v. Trex Co., Inc.*, No. 09-CV-00670, 2013 WL 791229, at

17 *1 (N.D. Cal. Mar. 4, 2013). The Federal Judicial Center has determined that a

18 notice plan that reaches at least 70% of the class is reasonable. FEDERAL JUDICIAL

19 CENTER, *Judges' Class Action Notice and Claims Process Checklist and Plain*

20 *Language Guide* 3 (2010).

21    As for its contents, notice is satisfactory where it "generally describes the

22 terms of the settlement in sufficient detail to alert those with adverse viewpoints to

23 investigate and to come forward and be heard." *Mendoza v. Tucson Sch. Dist. No. 1*,

24 623 F.2d 1338, 1352 (9th Cir. 1980) *disapproved of on other grounds by Evans v.*

25 *Jeff D.*, 475 U.S. 717, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986); *see also* Alba Conte

26 & Herbert B. Newberg, *Newberg on Class Actions* § 11:53 at 167 (4th ed. 2002)

27 (notice is "adequate if it may be understood by the average class member."). Rule 23

28 requires that the notice must set forth the nature of the action, define the class to be

certified, identify the class claims and defenses at issue, and also explain to class members that they may enter an appearance through counsel if so desired, request exclusion from the settlement class, and that any judgment will be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B).

Following preliminary approval, the Parties, with the assistance of professional settlement administrator Kurtzman Carson Consultants LLC ("KCC"), faithfully adhered to the requirements of the Settlement, Rule 23, Due Process, and this Court's Order by constructing and implementing a Notice Plan that included direct mail notice to all Settlement Class Members. (Declaration of Karen Rogan, ("Rogan Decl.") attached hereto as Exhibit B, ¶¶ 2-4.) In order to establish the identity of Class Members and ensure that direct mail was especially effective, PSS provided the Settlement Administrator with a list of cellular telephone numbers to which the text messages at issue in this case were sent. (*Id.* ¶ 3.) From there, KCC was able to use a combination of reverse cell phone look-up searches to send 293 direct mail notices to members of the Settlement Class. (*Id.* ¶ 4.) This direct and email notice proved especially effective, resulting in a rate of 83.5% of Class Members receiving direct notice. Further, on May 27, 2016, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), the Settlement Administrator cause to be mailed a letter enclosing the requisite court documents to the U.S. Attorney General and the Attorneys General of each state and U.S. territory giving notice of the Settlement. (*Id.* ¶ 4.)

The direct mail notice included a copy of the Claim Form and the "Long Form" notice approved by the Court, which provided full details regarding the rights of Class Members to object to or opt-out of the Settlement, notified Class Members that no further notice would be provided to them, and informed them that the Settlement had been preliminarily approved. All told, the Notice Plan achieved its projected saturation through direct notice and in the Settlement Administrator's opinion comports with due process.  (*Id.* ¶ 11.)

Furthermore, shortly after the Notice was mailed the Parties began receiving reports from the Settlement Administrator that were suggestive of a low claims rate. To address this perceived shortfall, Settlement Class Counsel's law firm obtained the list of cellphone numbers from the Settlement Administrator and began calling every class member to inform him/her of their legal rights under the agreement. (Woodrow Decl. ¶ 13.) Every Settlement Class Member who had yet to file a claim was called at least twice. (*Id.*) As a result of this extra effort the claims rate is presently 18.73%, which is of course high for a consumer TCPA class action.

The Settlement also featured the creation and maintenance of a Settlement Website (https://eclaim.kccllc.net/caclaimforms/prz/home.aspx) which was used by Class Members to download and submit claims.

Finally, in addition to implementing the methods of notice that resulted in reaching the greatest number of Class Members possible, the content of the notice was specifically designed so that it used simple, plain language encouraging readership and comprehension. (*See* Ex. A to Rogan Decl.) In sum, notice to the Class complied with the Court's Preliminary Approval Order, Rule 23, and Due Process, plainly comprising the "best practicable notice under the circumstances."

## V.    THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) provides that a class action shall not be dismissed or compromised without the approval of the court. Fed. R. Civ. P. 23(e); *Wren v. RGIS Inventory Specialists*, No. 06-CV-05778, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). Having already determined that the settlement warrants preliminary approval, the final step in the approval process requires the court to make a final fairness determination. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litigation, Third, § 30.41, at 236-37 (1995)). At this second, final approval stage, the court's analysis focuses on whether the proposed class action settlement "is fundamentally fair, adequate, and reasonable." *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F.*,

688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)). A settlement typically meets these criteria where "the interests of the class are better served by the settlement than by further litigation." *Garner v. State Farm Mut. Auto Ins. Co.*, No. 08-CV-1365, 2010 WL 1687832, at *8 (N.D. Cal. Apr. 22, 2010) (quoting Manual for Complex Litigation, Fourth § 21.61 (2004)). The decision to approve or reject the settlement rests soundly with the trial judge, though courts should give proper deference "to the private consensual decision of the parties." *Garner*, 2010 WL 1687832, at *8 (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution. . . .")). In general though, the Ninth Circuit has recognized that there is a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

In determining if a settlement should be finally approved the trial court examines: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). No one factor carries more weight than others, and the importance of each factor will depend on "the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Moreover, in the Ninth Circuit, "[s]ettlements are afforded a presumption of fairness if (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of

the class objected." *Schiller v. David's Bridal, Inc.*, No. 10-CV-00616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012), *report and recommendation adopted* June 28, 2012 (citing 4 William B. Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. West 2011)).

As set forth below, each of these considerations weighs in favor of approval.

### A.    The Strength of Plaintiff's Case

The first factor courts analyze is the strength of the plaintiff's case, which requires a balancing of the "likelihood of success on the merits and the range of possible recovery." *Garner*, 2010 WL 1687832, at *9; *see also Shames v. Hertz Corp.*, No. 07-CV-2174, 2012 WL 5392159, at *5 (S.D. Cal. Nov. 5, 2012) (this analysis requires balancing "the vagaries of litigation and [] the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (citing *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526). This analysis, however, does not require the Court to conduct a "speculative measure of what might have been awarded in a judgment in favor of the class," or "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D at 526 (citations omitted). Additionally, in light of the numerous subjective criteria that necessarily handicap the potential range of recovery, "the Court may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff[s'] likelihood of recovery." *Garner*, 2010 WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965).

Plaintiff and Class Counsel are confident in the strength of their claims and believe that if the case were to proceed to summary judgment or to trial, they would likely succeed on the merits. Further, if Plaintiff were to succeed at trial the potential recovery for the Class would be significant. Given that the TCPA provides for $500

in damages for each violation and there are hundreds of Class Members who received multiple calls, the potential recovery totals over one million dollars. *See* 47 U.S.C. § 227(b)(3)(B). Precedent involving similar facts indicates that Plaintiff would have a strong chance of succeeding in both adversarial class certification and at summary judgment. *Lee v. Stonebridge Life Ins. Co.,* 289 F.R.D. 292, at *4 (N.D. Cal. Feb. 12, 2013) (certifying a nationwide class in a TCPA text message action); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012) (certifying both a national and state subclass in a TCPA text message action); *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 727-28 (N.D. Ill. 2011) (denying defendant's motion for summary judgment); *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09-CV-05601, 2011 WL 4585028, at *6 (N.D. Ill. Sept. 30, 2011) (same).

Nonetheless, PSS repeatedly argued that it would either defeat class certification or that it would ultimately prevail on the merits because due to a variety of defenses, including the defense that the equipment it used does not qualify as an ATDS under the TCPA. While Plaintiff is confident, not all TCPA class actions succeed. *See, e.g*., *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085-86 (C.D. Cal. 2012) (declining to extend the TCPA liability to entity on whose "behalf" text message was sent absent traditional agency relationship); *Green v. DirecTv, Inc.*, No. 10-CV-117, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010) (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 (1992) and finding that plaintiff provided prior express consent to be contacted by providing her telephone number to defendants); *Gene and Gene, LLC v. Biopay LLC,* 541 F.3d 318, 327 (5th Cir. 2008) (stating that the predominant issue in a TCPA case "is undoubtedly one of *individual* consent"). Considering that several of these issues remain untested, the uncertainty involved in challenging Defendant's arguments is a factor weighing in favor of the reasonableness of this Settlement.

Given the defense PSS was prepared to mount through experienced counsel, as well as the additional hurdles presented at class certification, a compromise benefitting both the Plaintiff and the Class represents a reasonable conclusion to this litigation. *See Bellows v. NCO Fin. Sys., Inc.*, No. 07-CV-01413, 2008 WL 5458986, at *7 (S.D. Cal. Dec. 10, 2008) (noting that "the very essence of a settlement agreement is compromise, 'a yielding of absolutes and an abandoning of highest hopes' . . . in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.") (citing and quoting *Officers for Justice*, 688 F.2d at 624.) And, considering the complexity of the issues still to be litigated as well as the very real potential that Defendant's success could completely deprive the Plaintiff and Class of any relief whatsoever, the instant Settlement achieves a compromise that recognizes both the strengths and weaknesses of Plaintiff's claims. *See Martin v. AmeriPride Servs., Inc.*, No. 08-CV-440, 2011 WL 2313604, at *6 (S.D. Cal. June 9, 2011) (instructing courts to determine "whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinarily strong case."). Given the strength of Plaintiff's claims—and in consideration of the risk of further litigation as discussed more fully below—this factor favors approval of this Settlement.

## B.     The Risk of Continued Litigation

The second factor courts may consider is "the risk, expense, complexity, and likely duration of further litigation." *Churchill Vill.,* 361 F.3d at 575. This requires a balancing of the "risk of continued litigation . . . against the certainty and immediacy of recovery from the Settlement." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). When considering the immediate recovery provided by a fair settlement versus the uncertainty of continued litigation, "it has been held proper to take the bird in hand instead of a prospective flock in the bush." *Kim v.*

*Space Pencil, Inc.*, No. 11-CV-03796, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) (quoting *Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005)). And, as indicated above, where several significant procedural hurdles yet remain, including anticipated summary judgment motions, adversarial class certification, and the possibility of appeals, these considerations favor approval of the settlement under this factor. *See Garner*, 2010 WL 1687832, at *10 (citing *Rodriguez*, 563 F.3d at 966).

The expense, duration and complexity of the protracted litigation sure to ensue in the absence of this Settlement would be substantial, and significant labor and expenses would certainly be expended on both sides in advance of class certification, summary judgment, expert witness discovery, and the briefing and arguing of a number of discovery motions, pre-trial motions, and evidentiary motions. Further, should this matter proceed to trial, the Parties would necessarily incur the expenses involved in months of preparation and the calling of witnesses and experts, potentially from across the country. *See Young v. Polo Retail, LLC*, 02-CV-4546, 2007 WL 951821, at *3 (N.D. Cal. Mar. 28, 2007). Given the potential for a statutory award totaling over one million dollars, the losing party would likely appeal the decision, resulting in the expenditure of even more time and money. In light of these inevitable expenses and the inherent risk involved in any continued litigation, the Court should find that the Settlement militates in favor of this factor.

## C.    The Risk of Maintaining Class Action Status

Exacerbating the inherent risk of pursuing and litigating the merits of this case is the unavoidable risk attendant to seeking adversarial class certification and then maintaining class status throughout the remainder of the litigation. This is especially tenuous given that "[a] district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982)). Courts will consider this factor even where a settlement has been reached prior to a motion for class certification,

given that pre-certification concerns validate the risk both parties face should plaintiffs succeed or fail in certifying the class. *See Gardner v. GC Servs., LP*, No. 10-CV-0997, 2012 WL 1119534, at *4 (S.D. Cal. Apr. 2, 2012) (recognizing the risk class certification poses for both parties and acknowledging the benefits of settlement prior thereto).

In this instance the Court's May 13, 2016 Preliminary Approval Order certified a nationwide class for settlement purposes only. (Dkt. 37.) Thus, in absence of this Settlement, Plaintiff would first face a highly contested motion for class certification. Even if they were to succeed, Mendez would then run the risk of maintaining certification in the face of Defendant's ability to move at any time to decertify the Class. Nonetheless, Class Counsel is confident that given the uniform nature of Defendant's alleged conduct toward the Class, certification would be proper. This is because the key issues with regard to Defendant's conduct are common ones: whether Defendant sent text messages after people responded "STOP," whether responding STOP is sufficient to revoke consent, whether the equipment used to send such text messages falls under the statutory definition of an "automatic telephone dialing system," and whether Defendants' conduct violated the TCPA. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2556 (2011) (explaining that commonality is found where the claims of all class members "depend upon a common contention," and "[e]ven a single [common] question will do") (modifications in original, internal quotations omitted). Yet, even though significant authority exists favoring the certification of TCPA class actions under similar facts, *Lee*, 2013 WL 542854, at *4, *Agne*, 268 F.R.D. at 572, there is always the very real possibility of the denial or decertification of the class as well. Thus the Court should find the decision to settle at this stage a reasonable one and supportive of the fairness of the Settlement.

### D.    The Amount Offered in Settlement

The next factor utilized in determining the overall fairness of a settlement

requires the Court to compare the actual settlement amount to the parties' estimates of the amount of damages that would have been recovered if the action were to be successfully litigated at trial. *Martin*, 2011 WL 2313604, at *6. In considering the ultimate potential recovery however, courts are instructed to be mindful of the perils faced along the way. *See Garner*, 2010 WL 1687832, at * 11 (noting that "'even where the total settlement fund is small,' it may not be 'unreasonable in light of the perils plaintiffs face in obtaining a meaningful recovery on their claims'") (citing *In re Critical Path, Inc.,* No. 01-CV-00551, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002)); *accord Jaffe v. Morgan Stanley & Co.,* No. 06-CV-3903, 2008 WL 346417, at *9 (N.D. Cal. Feb.7, 2008) ("[t]he settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial"); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) (holding that the possibility "that the settlement could have been better ... does not mean the settlement presented was not fair, reasonable or adequate"). This factor is further strengthened where the settlement is "proposed after protracted arms-length and adversarial negotiation, during which time an experienced impartial mediator helped the Parties arrive at a compromise amount that both Parties find satisfactory." *Garner*, 2010 WL 1687832, at *11.

This Settlement calls for Defendants to establish a $450,000 Settlement Fund from which recipients of the alleged text messages may receive up to either a $750 payment or a certificate for $1,100 in storage services in return.[1] Where, as is the case here, the class members' claims involve statutory damages, the court is not required to find "a specific monetary value corresponding to each of the plaintiff

---

[1] Given the number of text messages sent, liability in this case would amount to approximately $500,000 ($1,500,000 in the event willfulness is found). As such, the Settlement Fund represents almost 90% of the potential liability for non-willful violations.

class's statutory claims and compare the value of those claims to the proffered settlement award." *Lane,* 696 F.3d at 823. And though it seems axiomatic, the payment of a cash settlement to the class "is a good indicator of a beneficial settlement." *See Rodriguez*, 563 F.3d at 965.

Further, the results here are outstanding and exceed the amounts per claim typically available in TCPA settlements, which have included:

| Case name | Amount per Claimant |
|---|---|
| *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) | $20.00 to $40.00 |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) | $12.97; or, $17.29 voucher |
| *Kazemi v. Payless Shoesource, Inc.*, 09- cv-5142 (N.D. Cal.) | $25.00 voucher |
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) | $34.60 |
| *Steinfeld v. Discover Financial Services*, 12-cv-1118 JSW (N.D. Cal.) | $48.69 |
| *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 13525 (S.D. Cal. 2008) | $70.00 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290 BEN (S.D. Cal.) | $84.82 |
| *Wilkins, et al. v. HSBC Bank Nevada, N.A.*, 14 C 190 (N.D. Ill.) | $102.62 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (S.D. Cal.) | $100.00 |
| *Robles v. Lucky Brand Dungarees, Inc.*, 10-cv-4846-MMC (N.D. Cal.) | $100.00 |
| *Kramer v. B2Mobile*, 10-cv-2722 CW (N.D. Cal.) | $100.00 |

| | |
|---|---|
| *Lanza v. Upscale Events by Mosaic, LLC*, 13-cv-80093 DMM (S.D. Fla.) | $150.00 |
| *Ellison v. Steven Madden, Ltd.*, 11-cv-5935 (C.D. Cal.) | $150.00 |
| *Bayat v. Bank of the West*, C 13-2376 EMC (N.D. Cal.) | $151.00 |
| *Weinstein v. The Timberland Co., et al.*, 06-cv-454 (N.D. Ill.) | $150.00 |
| *Satterfield v. Simon & Schuster, Inc.*, 06-cv-2893 (N.D. Cal.) | $175.00 |
| *Rojas v. Career Education Corporation*, 10-cv-5260 (N.D. Ill.) | $200.00 |
| *Lozano v. Twentieth Century Fox Film Corp.*, 09-cv-6344 (N.D. Ill.) | $200.00 |

The instant Settlement is more than reasonable in light of these other settlements under the TCPA that have been approved as fair, reasonable and adequate. *See also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (discussing range of acceptable TCPA class settlements based on per claimant recovery, approving $34.60 per claiming member); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant). Put simply, $750 in cash and $1,100 in storage services exceeds the relief obtained by these other industry settlements.

Furthermore, this valuation of the Settlement amount does not take into consideration the prospective relief that will aid in eliminating the complained-of conduct by protecting Class Members from further receipt of allegedly unauthorized text messages from Defendants. As noted above, the Settlement requires that PSS, to the extent it seeks to send text messages, must take reasonable steps to ensure that all opt out requests are honored. As a result, the value of the Settlement represents a

1   more than adequate recovery for the Class.

2       **E.**    **The Extent of Discovery Completed and the Stage of Litigation.**

3       Next, the Court may consider both "[t]he extent of the discovery conducted to

4   date and the stage of the litigation" as indicators of class counsel's familiarity with

5   the case and ability to make informed decisions. *In re OmniVision*, 559 F. Supp. 2d

6   at 1042 (citing *In re Mego Fin. Corp.*, 213 F. 3d at 459). There exists no specific

7   stage of the proceedings, nor quantity of information gleaned from discovery, that

8   automatically tips this factor in favor of settlement. Instead, "as long as the parties

9   have sufficient information to make an informed decision about settlement, formal

10  discovery is not a necessary ticket to the bargaining table." *Gardner*, 2012 WL

11  1119534, at *5 (quoting *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th

12  Cir. 1998)). Courts routinely find this factor satisfied even in cases that have not

13  progressed beyond the pleadings stage, or where little or no formal discovery has

14  been conducted. *See, e.g.*, *In re Patriot Am. Hospitality Inc. Sec. Litig.*, MDL 00-

15  1300, 2005 WL 3801594, at *2 (N.D. Cal. Nov. 30, 2005) (finding this factor

16  satisfied and granting approval even where the case had not proceeded beyond the

17  pleading stage and no formal discovery had taken place); *Odrick v. UnionBancal*

18  *Corp.*, No. 10-CV-5565, 2012 WL 6019495, at *4 (N.D. Cal. Dec. 3, 2012)

19  (approving settlement reached at the early stages of litigation and where little

20  discovery was conducted).

21      Ultimately, all that is required is that the parties demonstrate a "clear view of

22  the strengths and weaknesses of their cases." *Bellows*, 2008 WL 5458986, at *8

23  (quoting *In re Warner Comm'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y.

24  1985)). And where the parties demonstrate an understanding of the legal and factual

25  issues at play, "[a]n initial presumption of fairness is usually involved if the

26  settlement is recommended by class counsel after arm's-length bargaining." *Harris*

27  *v. Vector Mktg. Corp.*, No. 08-CV-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr.

28  29, 2011) (citations omitted).

In this case, the stage of the litigation has allowed for a meaningful amount of informal discovery and negotiations necessary to achieve the instant Settlement. After Plaintiff Mendez filed his initial complaint, the Parties engaged in frank settlement discussions that included the disclosure of relevant information regarding the size and scope of the class that would aid in negotiations. (*See* Woodrow Decl. ¶ 4.) This information, coupled with information regarding the nature of the "glitch" that lead to Defendant not being able to honor "STOP" requests, gave Class Counsel the information needed to properly value the claims. As such, the Parties had more than sufficient information on hand to evaluate their litigation position, further supporting the reasonableness of the instant Settlement.

### F.   The Experience and Views of Counsel.

The next factor warranting consideration is counsel's experience and its own views about the adequacy of the Settlement. *Garner*, 2010 WL 1687832, at *14. As a general matter "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re OmniVision*, 559 F. Supp. 2d at 1043 (citing *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Courts apply this presumption to settlements negotiated by experienced counsel given that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995). This factor is further strengthened when class counsel has specific experience in the type of claims being litigated. *See Martin,* 2011 WL 2313604, at *7; *see also Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 528 ("[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Such a presumption is appropriate here given that Class Counsel specialize in the litigation of consumer class actions of similar size and complexity, and have litigated and settled numerous TCPA text-messaging class actions. (Woodrow Decl.

¶ 2, and Woodrow & Peluso, LLC Firm Resume, a true and accurate copy of which is attached as Ex. 1 to the Woodrow Decl.). This experience and familiarity steered Class Counsel's efforts throughout this litigation and was a critical factor in obtaining the relief embodied by the Settlement, as well as ensuring that the Class received the highest quality of representation.

This factor is not limited only to the caliber of Class Counsel, however. To that extent, Class Counsel were pitted against highly experienced defense counsel from a top-tier national defense firm. Given such experience, it was only through extensive negotiations and a formal mediation that the Parties were able to reach this Settlement. Faced with the prospect of receiving nothing should Defendant succeed in any aspect of its defense, Class Counsel are confident that a Settlement Fund that provides $750 in cash or $1,100 in storage—in addition to the significant prospective relief—provides an exceptional result in this litigation. This factor thus also weighs in favor of final approval of the Settlement.

### G.      The Presence of a Governmental Participant

This case was not instituted by a government agency, and no governmental agency intervened or otherwise participated in this lawsuit.  Some courts hold that such a result means that this factor does not apply to the Court's analysis. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528. Thus this factor is either neutral, or if considered, favors final approval of this Settlement as there is no governmental actor presently working to secure relief on behalf of the Settlement Class.

### H.      The Reaction of Class Members to Date

The deadline for Class Members to object to or opt-out of the Settlement was set for July 14, 2016. All told, no individual has requested exclusion and not a single Class Member filed an objection to the Settlement. This absolute absence of objections provides strong evidence of favorability and demonstrates the strength and reasonableness of the Settlement. *See e.g. Churchill Vill.,* 361 F.3d at 577; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (one objection out of

a potential class of 5,400); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (zero objections and sixteen opt-outs out of a class of 329 members). Moreover, a whopping 18.73% of the Settlement Class Members has filed claims, a number that easily beats TCPA settlements approved by courts in this and other Circuits. *See Shames,* 2012 WL 5392159, at *14 (approving settlement with 4.9% claims rate and collecting authorities); *see also In re TJX Cos. Retail Sec. Breach Litig.,* 584 F. Supp. 2d 395, 397, 406 (D. Mass. 2008) (approving settlement with rate of slightly more than 3%); *In re Compact Disc. Minimum Advertised Price Antitrust Litig.,* 370 F. Supp. 2d 320, 321 (D. Me. 2005) (noting approval 2% rate); *Strong v. BellSouth Telcoms., Inc.,* 173 F.R.D. 167, 169, 172 (W.D. La. 1997) (4.3%); *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *6 (C.D. Cal., Apr. 9, 2014); ("[T]he prevailing rule of thumb with respect to consumer class actions is 3-5 percent."). These results, specifically the absolute lack of opposition to the Settlement, favor a finding of reasonableness and warrant final approval.

## I.      There is No Evidence of Collusion

In addition to the foregoing factors, the Ninth Circuit has instructed courts to carefully scrutinize cases that are settled prior to class certification for signs of possible collusion. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). These signs include instances where (1) class counsel receives a disproportionate distribution of the settlement or the class receives no monetary distribution, (2) unawarded funds revert to the defendants rather than to the settlement fund for the class, and (3) a "clear sailing" fee arrangement provides for the payment of attorneys' fees separate and apart from class funds exists. *Id.* When these signs are present in a settlement, "the Court must 'examine the negotiation process with even greater scrutiny than is ordinarily demanded." *In re HP Laser Printer Litig.*, No. SACV 07-0667 AG RNBX, 2011 WL 3861703, at *4 (C.D. Cal. Aug. 31, 2011) (quoting *In re Bluetooth*, 654 F.3d at 947).

This Settlement Agreement is entirely free of collusion though its terms may

raise the concerns identified by the Ninth Circuit's decision in *In re Bluetooth*. First, Class Counsel are not receiving a disproportionate amount of the Settlement. Class Counsel's fee request represents 22% of the monetary benefit of the Settlement, a percentage that falls below the Ninth Circuit benchmark of 25% in common fund cases.[2] *In re Bluetooth*, 654 F.3d at 942; *see also Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Further, in *In re Bluetooth* the court was faced with a settlement that did not provide any monetary payments to Class Members, a stark contrast to the $750 payments and $1,100 certificates available to Class Members here. *In re Bluetooth*, 654 F.3d at 945. In addition, Class Counsel is seeking its fees as a percentage of the total value created by the Settlement, rather than requesting an amount separate and apart from the funds paid to the Class. *Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003); *In re Bluetooth*, 654 F.3d at 948-49. Thus the first factor typically indicative of collusiveness is absent from this Settlement.

Second, while this Settlement does in fact provide for a reversion of funds to the Defendant, there is nothing *per se* improper about a reverter clause, especially in cases such as this where the claims rate was uncertain at the outset, *see McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009), and where the case does not involve the disgorgement of ill-gotten gains back to consumers. *Nabal v. BJ's Wholesale Club, Inc.*, No. 02-2604, 2002 WL 32349137 (E.D. Pa. Aug. 2, 2002). Further, the court's concerns in *In re Bluetooth* surrounding a reverter clause focused on its presence in addition to a clear sailing provision only *if* they worked in conjunction to provide for unreasonably high attorneys' fees at the

---

[2] In accordance with this Court's Order granting Preliminary Approval to the Settlement (dkt. 37), Class Counsel filed its Motion for Approval of Attorneys' Fees and Class Representatives' Incentive Awards on July 1, 2016 and posted a copy of the Motion to the Woodrow & Peluso, LLC firm website. (Woodrow Decl. ¶ 14.) A more thorough discussion of the reasonableness of Class Counsel's fee request may be found therein, including an analysis of fee awards in comparable cases approved by courts in the Ninth Circuit.

expense of any relief to the Class. *In re Bluetooth*, 654 F.3d at 949. In contrast, this Settlement provides significant monetary relief to the Class and a proportional fee award. To that end, courts throughout the country have approved similar settlements under the TCPA that also involved a similar reverter. *See, e.g.*, *Kramer v. Autobytel, Inc.*, No. 10-CV-2722, dkt. 121-1 (N.D. Cal. July 18, 2011).

Finally, while the Settlement includes a "clear sailing" provision, the requested fees were negotiated solely as a percentage of the overall value of the Settlement, a condition that inextricably links Class Counsel's fees to the value obtained for the Class. Similar to the mere presence of a reverter, a "clear sailing" provision in and of itself is not an indication of collusiveness, and courts, including those in the Ninth Circuit, "recognize[] that clear sailing agreements are routinely accepted in both the federal and California courts." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 n.6 (S.D. Cal. 2011); *see also In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 553 (Cal. Ct. App. 2009); *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2nd Cir. 1985). Like its concerns in regards to reverter clauses, the *Bluetooth* court also cautioned against clear-sailing provisions where the requested fee is agreed upon independently of the amount provided for the class, not by its mere presence in a settlement. *In re Bluetooth*, 654 F.3d at 947. This is because such an arrangement can enable a Defendant to "pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Id*. (citation omitted). This Settlement raises no such concern as Class Counsel have negotiated and requested their fees to be a percentage of the total Settlement. Accordingly, this factor also demonstrates a lack of collusion between the Parties and favors approval of the Settlement.

In conjunction with the factors raised in *Bluetooth*, courts may also look to both the assurances of counsel and the presence of a neutral mediator as factors "weighing in favor of a finding of non-collusiveness," though neither is "on its own dispositive." *Id.* at 948. This case was settled only after a formal full day mediation

session with a well respected former jurist who ensured that the process was conducted at arms' length to ensure no collusion. *See e.g. Wren*, 2011 WL 1230826, at *14; *In re HP Laser Printer Litig.*, 2011 WL 3861703, at *4. Thus, even when placed under the stricter lens of scrutiny established by *Bluetooth*, the Settlement remains free of any of the collusive elements cautioned against, compares favorably to numerous other TCPA settlements approved throughout the nation and most importantly, represents an extraordinary victory for the Class.

In short, each of the factors supports granting final approval to the Settlement.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff Mendez respectfully requests the Court enter an Order granting Final Approval to the Class Action Settlement reached in this case and provide such other and further relief as the Court deems reasonable and just.

Dated: August 4, 2016

Respectfully Submitted, **Eric Mendez**, individually and on behalf of the Settlement Class

/s/ Steven L. Woodrow

One of Plaintiff's Attorneys

Richard T. Drury
richard@lozeaudrury.com
Rebecca Davis
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Steven L. Woodrow*
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso*
(ppeluso@woodrowpeluso.com)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300

1   Denver, Colorado 80210
    Telephone: (720) 213-0675
2   Facsimile: (303) 927-0809

3   Stefan Coleman, Esq.
    LAW OFFICES OF STEFAN COLEMAN, LLC
    201 S Biscayne Blvd, 28th Floor
4   Miami, Florida 33131
    Telephone: (877) 333-9427
5   law@stefancoleman.com

6

7   *pro hac vice

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on August 4, 2016, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


/s/ Steven L. Woodrow